## Wright *v.* Adams Express Company, Appellant.

*Carriers—Common carriers—Express company—Trunk—Evidence— Damages—Interstate commerce.*

1. Where a person delivers at a point in New Hampshire to a hotel porter a trunk properly tagged and addressed to the owner at a point in Pennsylvania, and the trunk is delivered by the initial carrier in New York to the final carrier, but is never delivered by the latter to the owner, it is incumbent on the owner in an action against the final carrier for the loss of the trunk, to. prove by some evidence having recognized probative value, that when the trunk was delivered to the initial carrier its contents remained as they were when he left it with his own agent, the hotel porter.

2. It is now the law of Pennsylvania that where the published rates of an express company are fixed on interstate shipments on the basis of an agreed on value of the package to be carried, unless a higher value be stated and a corresponding rate paid, the amount of the value so fixed in the bill of lading is the limit of the plaintiff's right of-recovery.

Argued Dec. 13, 1912. Appeal, No. 150, Oct. T., 1912, by defendant, from judgment of C. P. No. 4, Phila.

Co., Dec. T., 1909, No. 4,359, on verdict for plaintiff in case of Philip E. Wright v. Adams Express Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Trespass to recover for the loss of a trunk.   Before WILLSON, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant presented, inter alia, these points:

2. If the classification duly filed with the Interstate Commerce Commission by the American Express Company and the Adams Express Company, and in force on August 17, 1909, provided that "Merchandise rates are based on a value of not exceeding $50.00 per shipment and no further liability is assumed by the Express Company unless the shipper declares at time of shipment a higher value," and a higher value than $50.00 was not declared at the time of shipment, plaintiff's recovery is limited to $50.00.   *Answer:* Refused. [3]

3. If plaintiff, in violation of the Interstate Commerce Act and its amendments and supplements, obtained transportation at less than the regular rate by failing to declare the value of the trunk, he cannot recover more than $50.00, the value on which the rate was based.   *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $600.   Defendant appealed.

*Errors assigned* among others were (1) dismissing defendant's motion for judgment n. o. v.; (3, 4) answers to points as above, quoting them.

*John Lewis Evans*, with him *Thomas DeWit Cuyler*, for appellant.—A common carrier has no means of knowing anything about the owner of goods shipped or what the contents of a shipment received for transportation are, and once it has obtained possession of goods it is held

to the very highest form of accountability. A fair regard for the protection of the carrier would therefore require that the shipper be held strictly to the burden of proving by definite and certain evidence that the goods came into his possession: Speare v. Phila. & Reading Ry., 47 Pa. Superior Ct. 639.

*E. Spencer Miller,* for appellee.

OPINION BY HEAD, J., October 13, 1913:

The plaintiff sues to recover the value of a trunk and its contents which he alleges were lost through the negligence of the defendant company, a common carrier. The first contention of the defendant is there is no sufficient evidence to warrant a finding that said trunk was ever delivered to it for transportation. Of course the burden was on the plaintiff to prove, by the fair weight of the evidence, this fundamental fact; but it does not follow it could be established only by the direct and positive evidence of eyewitnesses. If the conclusion that it was so delivered is an inference which would naturally be drawn by reasonable men from other facts established, then the fact of delivery is sufficiently proven.

The evidence offered, which is without dispute, tended to show the following facts: The plaintiff and his wife, in the course of a summer excursion through the New England states, had reached the Hotel Wentworth at Portsmouth, New Hampshire. They determined to send by express their trunk, packed with clothing they would not thereafter require, to their home at Langhorne, Pennsylvania. The trunk was so packed, was properly tagged by the plaintiff with a card containing his name and address, and turned over to the regular baggage porter at the said hotel with instructions to deliver it to the local express company. This was on August 17, 1909. As the plaintiff was then leaving the hotel, and as it was not known what the exact amount of the ex-

press charges would be, the direction was they were to be collected at the point of destination. The trunk never was delivered at that point. The evidence further shows that on the said August 17 the American Express Company, a common carrier doing business at Portsmouth, N. H., received a trunk consigned to P. Wright, Langhorne, Pa., which it transported safely to New York city and there delivered, in apparent good order, on the following day to the Adams Express Company, the defendant. The waybill of the American Express Company, with the acknowledgment of the defendant attached thereto showing the receipt by the latter of the package therein described, was produced and offered in evidence. It was clear enough then that there was delivered to the defendant company on August 18, at New York city, a trunk which the American Express Company had received the day before at Portsmouth, N. H., and which was addressed in the manner already stated. That trunk the defendant never delivered at Langhorne. To argue the possibility that two trunks might have started on the same day at Portsmouth, N. H., consigned to P. Wright, at the small village of Langhorne, Pa., is in no way to attack the reasonableness of the inference that the trunk, received by the defendant at New York, was in fact the trunk of the plaintiff which had been delivered to the American Express Company on the day previous. If such an inference could not fairly be drawn by the jury from the facts established, little less than an actual demonstration would be necessary in the proof of every fact at issue in a trial.

But the defendant, conceding, for the sake of the argument, that the trunk of the plaintiff was delivered to it at New York, stoutly insists there is no sufficient evidence to warrant a finding that it then contained the articles which had been placed in it by the plaintiff and his wife on the day before when they packed it at Portsmouth. It is urged it was incumbent on the plain-

tiff to affirmatively prove, by some evidence having recognized probative value, that when the trunk was delivered to the initial carrier its contents remained as they were when the plaintiff left it with his own agent, the hotel porter. There is no contention that the porter was in any sense or degree the representative of the American Express Company, the initial carrier. The evidence fails to disclose whether the actual delivery to that initial carrier was made by the agent selected by the plaintiff or by a carter, drayman, or some other subagent chosen by the porter. Unless this lack of evidence can be supplied by some presumption recognized by the law, it is difficult to see how the plaintiff has discharged the burden of showing that the valuable contents of the trunk, when he left it with the porter, ever reached the initial carrier. The following language from the opinion of our Brother HENDERSON in Cohen & Schimdt v. Phila. & Reading Ry. Co. (not yet reported) is exactly in point: "No presumption arises, under the circumstances of the case, that the package was delivered at the wharf in the same condition in which it was when received by the drayman, and the burden of proof was on the plaintiffs to show that the lost silk was actually delivered to the railroad company. If the death of the drayman prevented the plaintiffs from accounting for the box in its transfer from the store to the wharf, it is a hardship, but a condition not usual in the experience of litigants. The death of a material witness does not relieve the suitor from supplying by competent evidence the testimony necessary to make out a case. Our attention has not been directed to any authority which convinces us there is a presumption that the box containing the silk had not been tampered with between the time it was packed and the time when the railroad company accepted it, and without such presumption the case is destitute of the evidence which would support a verdict for the plaintiffs." If that doctrine be sound, it would necessarily follow this record

discloses no sufficient evidence to support a finding for the plaintiff for a sum representing the valuable contents of his trunk.

As there was evidence, however, showing the value of the trunk itself independent of its contents, and its loss resulting from the negligence of the defendant, the learned court below could not have properly directed a verdict in favor of the defendant nor thereafter entered judgment non obstante veredicto. The first assignment of error, resting upon the refusal of the court to enter such judgment, was the only one pressed at the argument. But the defendant, under the conditions now existing, is not to be deprived of the benefit of any of the other assignments because they were not so pressed at the argument. As the law of Pennsylvania down to that time had been declared to be, in the decisions of this court and of the Supreme Court of Pennsylvania, the legal position contended for by the defendant, raised by these assignments, was untenable. The defendant had steadily insisted in a number of cases that its liability, in interstate shipments, was regulated by the terms of the bill of lading which the federal statute required it to issue in each case, and that the obligations therein set forth were valid and binding on the shipper in accordance with the interpretation that had been given them by the federal courts. Whilst therefore the assignments of error raising this question were not pressed at the argument before us, they were filed for the very purpose that their standing might be maintained if the supreme court of the United States should in the meantime determine the question adversely to the view so long held by the courts of Pennsylvania.

Since the trial of the present case, and since its argument in this court, the United States supreme court has delivered opinions in at least two cases which appear to have put this question finally at rest: Adams Express Company v. Croninger, 226 U. S. 491; C., B. & Q. Ry. v. Miller, 226 U. S. 513. The decisions of that tribunal

construing a statute of the national congress are the paramount law of the land and must be followed by the courts of every state. The necessary effect of these decisions is now to require us to hold that where the published rates of an express company are fixed on the basis of an agreed on value of the package to be carried, unless a higher value be stated and a corresponding rate paid, the amount of the value so fixed in the bill of lading is the limit of a plaintiff's right of recovery.

There was evidence offered which, if accepted by the jury after proper instructions, would have warranted a finding that the initial carrier had issued the ordinary receipt or bill of lading required by the law and that no special value had been stated to the carrier and no rate above the ordinary one, based on a valuation of $50.00, had been paid. An effort was made by the defendant to have the plaintiff produce in court such receipt or waybill, but it was held that its production was immaterial.

If upon a new trial the evidence should establish the necessary facts, the plaintiff would be entitled to have his second point, third assignment, affirmed. The same is true of the defendant's third point, the subject of the fourth assignment. The learned trial judge, in refusing these points, was of course but following, as he was obliged to do, the decisions of the appellate courts of his own state. For the reasons we have given, however, the case would necessarily be retried along somewhat different lines. The third and fourth assignments are sustained. The remaining ones do not, as we view them, exhibit any reversible error in the action of the court below, and they are accordingly overruled.

Judgment reversed and a venire facias de novo awarded.