ALABAMA GREAT SOUTHERN R. CO. v. GEORGE H. McFADDEN & BROS.

(District Court, E. D. Pennsylvania. May 25, 1916.)

No. 3500.

1. CARRIERS ⊚⇒30—CARRIAGE OF GOODS—RATES.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (Comp. St. 1913, § 8569), a shipper is liable for the rate fixed by the tariff filed, regardless of a mistake of the carrier's servant, or the fact that the shipper made prices in reliance on the rate quoted to him, for all persons are charged with notice of such rates.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. ⊚⇒30.]

2. COMMERCE ⊚⇒33—"INTERSTATE COMMERCE"—WHAT CONSTITUTES.

Where cotton was shipped to a point within the state where the shipments originated and there compressed, from thence being carried to points without the state, the shipments to the point where the cotton was compressed were not intrastate commerce shipments, there being no change of ownership, but were part of an interstate shipment, and interstate rates should be charged; the mere fact that the cotton was not always billed to its ultimate destination until after compression not affecting the matter.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81; Dec. Dig. ⊚⇒33.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. CARRIERS ⊚⇒30—CARRIAGE OF GOODS—RATES—VALIDITY.

Under Interstate Commerce Act, § 6, requiring carriers to file joint rates when they have been agreed upon, if not, the separate rates when no joint rates have been agreed upon, and requiring them to charge and receive no greater compensation than the rates prescribed, plaintiff, an interstate carrier, which had filed with the Interstate Commerce Commission a through rate for interstate shipments from points in one state to a point in another, must charge such rate, though the connecting carrier filed an intrastate tariff of local rates to the point of intersection of the two lines within the state, and there was a considerably less rate to the point of destination without the state from the point of intersection; the local rates not having been filed with the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. ⊚⇒30.]

At Law. Action by the Alabama Great Southern Railroad Company against George H. McFadden & Bros. On rule for judgment for want of sufficient affidavit of defense. Rule absolute.

Allen S. Olmsted, 2d, of New York City, and E. B. Richards and Robert D. Jenks, both of Philadelphia, Pa., for plaintiff.

John G. Johnson, of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. Suit is brought to recover a balance alleged to be due for freight charges upon shipments of cotton between October 1, 1909, and March 31, 1912, transported in part from points of origin in Alabama upon the lines of the Nashville, Chattanooga & St. Louis Railroad, and thence over the lines of the plaintiff and connecting carriers to New Orleans and Port Chalmette, La.,

and Savannah, Ga., and in part from Birmingham, Kimbrel, and Mc-Calla, Ala., points on plaintiff's lines, to Savannah, Ga., and from Birmingham, Ala., to New Orleans and Port Chalmette, La. The undisputed facts for the purposes of the present rule are as follows:

During the period in question the defendants purchased cotton for export and for sale and shipment outside of Alabama. The shipments originating on the line of the Nashville, Chattanooga & St. Louis Railroad were billed from Boaz, Albertville, and Guntersville, Ala. The junction of the initial carrier with the plaintiff's railroad is at Attalla, Ala. Kimbrel and McCalla are south of Birmingham.

As the conditions covering the shipments from Boaz, Albertville, and Guntersville were similar, except as to the amount of the rate, the case was, for convenience, argued and will be considered upon the basis of the shipments from Albertville to New Orleans. At Birmingham, Ala., on the plaintiff's line, was a compressing plant at which the plaintiff delivered for compression and compressed cotton coming over its line from Attalla. In accordance with the practice and a right reserved in the tariffs filed, shipments of cotton are stopped in transit for compression at points convenient to the carriers and are compressed by the carrier for its own convenience in order to reduce bulk. The defendants' cotton shipped from Albertville was billed to Birmingham, where it was stopped for compression. When purchases of uncompressed cotton were made by the defendants at Albertville, they were not at all times certain to what point they would ultimately ship the cotton after compression, and therefore maintained an agency at Birmingham, and shipped cotton to Birmingham on bills of lading which called for delivery to the order of the defendants, or with notice to them. Birmingham was the assembling point at which the defendants assembled, not only uncompressed cotton purchased at Albertville, but uncompressed cotton purchased at Birmingham and other points in Alabama, and after compression the defendants, through their agency at that point, routed the bales of compressed cotton to such points as they might determine according to their trade contracts. The cars on which the cotton arrived at Birmingham via Attalla were not retained during compression for the shipment of the same cotton, but the transportation of such cars, so far as their contents were concerned, ended at Birmingham. All of the cotton received by the defendants at Birmingham was compressed without any care to preserve the identity of that received from any particular points, and the compressed cotton in bales was reshipped in different cars. After the compression of the cotton by the plaintiff, it was shipped by it from Birmingham to New Orleans upon the surrender of the bills of lading from Albertville to Birmingham, and the original bills of lading were then exchanged for bills of lading reading either from Albertville or from Attalla to New Orleans.

During the period in question the Nashville, Chattanooga & St. Louis Railway Company had on file with the Interstate Commerce Commission a tariff published by it containing, inter alia, a rate of 57 cents per 100 pounds on cotton "uncompressed with privilege to carrier of compressing," for transportation from Albertville, Ala., to New

Orleans, La., over the lines of the plaintiff and other connecting lines. Certificates of concurrence in this rate had been filed by the plaintiff and the other connecting carriers. At the same time the plaintiff had on file with the Interstate Commerce Commission a tariff published by it, in which the various other carriers concerned had filed concurrence with the Interstate Commerce Commission stating a rate on cotton in bales uncompressed with privilege to carrier of compressing from Attalla, Ala., to New Orleans, and containing as a footnote to the statement of rates the following:

"From Attalla, Alabama, to Savannah, Georgia, New Orleans and Port Chalmette, La., on cotton originating at N., C. & St. L. Ry. stations 32 cents."

By "N., C. & St. L. Ry." is meant the Nashville, Chattanooga & St. Louis Railway. The Nashville, Chattanooga & St. Louis Railway had on May 25, 1909, published and filed according to law its Alabama Intrastate Commodity Tariff No. 1, effective June 1, 1909, under which it fixed a local rate of 11.7 cents per 100 pounds for the shipment of cotton from Albertville to Attalla, there to be forwarded to points in Alabama on the plaintiff's lines. Under the two latter tariffs the agents of the plaintiff in Alabama fixed a rate upon the shipments involved in this suit, composed of the 32-cent rate from Attalla to New Orleans plus the 11.7-cent rate from Albertville to Attalla.

[1] The defendants relied upon the plaintiff's agent for information and had no knowledge of the 57-cent rate covering the through route from Albertville to New Orleans. The defendants, in fixing the price of their cotton, fixed it upon the basis of the combination rate, published and declared by the plaintiff and charged and collected by it from them, of 32 cents with the local rate. The plaintiff now claims that the joint through rate published and filed with the Interstate Commerce Commission was the only lawful rate, and that the defendants are liable to them for the difference between that rate and the rates charged and paid. If the 57-cent joint through rate is the lawful charge, the consequent hardship which would be imposed upon the defendants, if they are now called upon to pay the difference, would not excuse a departure from that rate by the carrier or the shippers, even though the latter acted upon the representation of the agents of the plaintiff and continued their shipments, supposing the rate to be the legal one for the entire period.

The rule is summarized in the case of Louisville & Nashville Railroad Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665, as follows:

"Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases; but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

[2] I fail to see how the shipments from Albertville to Birmingham, under the circumstances of the present case, can be construed as intrastate. The stoppage in transit for compression at Birmingham, the assembling of the cotton originating at Albertville with other cotton purchased at Birmingham and other points in Alabama, and the subsequent routing of the compressed cotton to points determined by the defendants according to their trade contracts, do not relieve the shipments originating at Albertville and billed to Birmingham, and subsequently billed from Albertville or Attalla to New Orleans, of their character as interstate commerce. There was no change of ownership from the time the cotton left Albertville until its arrival at New Orleans. It was continuously in the possession, custody, and control of the carrier, and the stoppage of the cotton at Birmingham for compression, still in the possession of the carriers, was merely for a service incidental to its transit over the entire interstate route.

That the essential character of the commerce, not its mere accidents, such as its billing, its handling and concentration at Birmingham, or the loss of identity of the actual cotton shipped from Albertville, determines its interstate character, is no longer open to dispute. Texas & New Orleans Railroad Co. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310; Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. 83; Ohio Railroad Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004.

[3] The question, then, is whether the 32-cent rate applying to shipments from Attalla to New Orleans upon cotton originating at Nashville, Chattanooga & St. Louis Railway stations, plus the rate from Albertville to Attalla of 11.7 cents, fixed by the Nashville, Chattanooga & St. Louis Railway in its Alabama Intrastate Commodity Tariff, is a lawful rate. It cannot be questioned that the 57-cent through joint rate, included in the tariff duly published and filed with the Interstate Commerce Commission, is a lawful rate which would govern this shipment, unless some other rate equally lawful was in existence and effect at the same time. The part of the combination rate covering the shipment from Albertville to Attalla, although set out in an Alabama Intrastate Tariff, is not included in the tariff of the plaintiff filed with the Interstate Commerce Commission under which the 32-cent rate was charged from Attalla to New Orleans, nor is there any cross-reference in the latter tariff to the local intrastate tariff. The effect of the tariff providing for the 32-cent rate, therefore, is to leave the rate from Albertville to Attalla entirely indefinite and uncertain.

The language of section 6 of the act to regulate commerce is very clear. It provides that:

"Every common carrier subject to the provisions of this act shall file with the Commission created by this act * * * schedules showing all the rates, fares and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier * * * when a through route and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route shall file * * * as aforesaid, the separately established rates, fares and charges applied to the through transportation.

* * * Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time."

The tariff fixing a rate of 32 cents from Attalla upon shipments originating at stations on the Nashville, Chattanooga & St. Louis Railway, and leaving the rate from Albertville to Attalla to be determined from a tariff not published and filed with the Interstate Commerce Commission, is not, within the language, meaning, or intent of the terms of the act, a publication of a rate for a continuous through route. It does not show a joint through rate, nor the separately established rates of the several carriers for the through route, to be applied to the through transportation. The effect of the combination rate is to enable the carrier to charge, and the shipper to pay, a less and different compensation for the transportation between Albertville and Louisiana from that specified in the tariff lawfully published and filed and in effect at the time, by permitting the shipper and carrier to apply to a part of the continuous through transportation a rate not filed with the Interstate Commerce Commission. Such a practice is contrary to the interpretation of the law in a long line of undisputed rulings by the Interstate Commerce Commission, and was held unlawful by the Circuit Court of Appeals for the Second Circuit in Standard Oil Co. v. United States, 179 Fed. 614, 103 C. C. A. 172.

It is held, therefore, that the 57-cent rate under the tariff published and filed with the Interstate Commerce Commission is the only legal rate applicable to this transportation, and, under the authorities, the defendants are liable for the difference between the amounts which should have been paid under that tariff and the sums actually paid by them. There is no defense set up as to the shipments originating at Birmingham, McCalla, and Kimbrel, and the Attalla rate does not apply to them.

Rule absolute.