McFADDEN et al. v. ALABAMA GREAT SOUTHERN R. CO.

(Circuit Court of Appeals, Third Circuit. April 26, 1917.)

No. 2138.

1. CARRIERS ⟊30—RATES—RIGHT OF ACTION BY CARRIER.

When transportation is interstate, the interstate rate is the legal rate, and must be demanded and paid, and if a lesser rate is charged and paid, intentionally or innocently, recovery must be had against the shipper for the difference.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81.]

2. COMMERCE ⟊33—INTERSTATE COMMERCE—TRANSPORTATION OF GOODS.

Goods actually destined for points beyond the state of origin are necessarily in interstate commerce when they are delivered to the carrier and start in the course of transportation to another state, whether shipped on through bills of lading, or on initial bills to a terminal within the state, where they are transshipped on new bills of lading to a point beyond the state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81.]

⟊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. COMMERCE ☞33—INTERSTATE COMMERCE—TRANSPORTATION OF GOODS.
    Cotton consigned to the shipper's order was shipped to B. in the state of origin, where, without any delivery to the shipper, it was unloaded, compressed by the carrier, in accordance with a right reserved in tariffs filed and as a part of the transportation service rendered, reloaded, and rebilled to points outside the state. *Held*, that the shipment was interstate, as the stop at B. was merely to prepare the cotton for a continuance of the journey, and was a mere incident of the transportation.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81.]

4. PLEADING ☞129(2)—ADMISSIONS BY FAILURE TO DENY.
    In a carrier's action for the difference between its legal interstate rate and the rate charged a shipper of cotton, compressed at B., a point within the state of origin, and then rebilled to points outside the state, the statement of claim alleged that the cotton was intended to be transported beyond B., and actually was transported to points in other states. The affidavit of defense admitted the transportation and delivery of the cotton, without alleging that it was delivered to the shipper at B. or elsewhere in the state of origin, or that it was intended for transshipment to points in that state. *Held*, that plaintiff's averments, indicating that the shipment was intended for interstate transportation and was so transported, were not denied, and were to be taken as true.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 271, 273; Damages, Cent. Dig. § 418.]

5. CARRIERS ☞30—TRANSPORTATION OF GOODS—RATES.
    Where cotton consigned to the shipper's order was shipped over the lines of connecting carriers to B. in the state of origin, where it was compressed by the carrier and rebilled to points outside the state, the through rate from point of shipment was the legal rate, and a rate consisting of the initial carrier's intrastate rate to the junction point and the connecting carrier's interstate rate from that point was not a lawful rate for such shipment, under Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (Comp. St. 1916, § 8569), requiring the filing of through rates when established; such intrastate rate not being filed with the Interstate Commerce Commission.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81.]

6. PLEADING ☞345(1)—JUDGMENT ON PLEADINGS—SUFFICIENCY OF.
    In a carrier's action for the difference between the legal rate under its schedules and tariffs filed with the Interstate Commerce Commission and the rate charged and paid, the statement of claim alleged that certain certificates of concurrence, by which one road bound itself to the published rates of another road, had been delivered, and certain schedules and tariffs filed, but did not set them out in full. *Held*, that the statement of claim was not insufficient to warrant judgment for want of sufficient affidavit of defense, as such certificates and schedules did not constitute the cause of action sued on, but were only evidence of the cause of action.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055, 1057–1059.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by the Alabama Great Southern Railroad Company against George H. McFadden and others, formerly copartners trading as George McFadden & Bros. Judgment for plaintiff (232 Fed. 1000), and defendants bring error. Affirmed.

John G. Johnson and James Wilson Bayard, both of Philadelphia, Pa., for plaintiffs in error.

Allen S. Olmsted, 2d, and Robert D. Jenks, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The main question in this case is whether the aggregate of two rates, one intrastate for a part of a given transportation and the other interstate for the rest of it, is the legal rate for interstate shipments, when there is at the same time a duly established interstate through rate for the same transportation. The question had its rise doubtless in the fact that the two first named rates when combined were less in amount than the one through rate.

A full statement of the case appears in the opinion of the District Court. 232 Fed. 1000. The pertinent facts briefly stated are these: The defendants are large cotton brokers operating in the State of Alabama. They purchased uncompressed cotton at various points in Alabama, shipped it to Birmingham where it was compressed and then transhipped it to points beyond the State. As typical of their transactions the defendants shipped quantities of cotton from Albertville, Alabama, by the Nashville, Chattanooga & St. Louis Railway Company, to Attalla, Alabama, a junction point, thence by the Alabama Great Southern Railroad Company (the plaintiff below) to Birmingham, Alabama, on through bills of lading to the last named point. At Birmingham the uncompressed cotton was unloaded, compressed by the carrier in accordance with a right reserved in tariffs filed and as a part of the transportation service rendered, and then re-loaded for continued shipment. At Birmingham the original bills of lading were surrendered and the shipments re-billed by the defendants to points beyond the State; but they were re-billed not from Birmingham but back from Attalla. This was done not to select a particular route but to obtain a particular rate. The rate paid by the defendants upon the demand of the plaintiff railroad company, acting for itself and its connecting lines, for the entire interstate shipment begun and completed under the two bills of lading, was the aggregate of two rates both legally established for the transportation to which they severally related. The first was a rate of the Nashville, Chattanooga & St. Louis Railway Company for intrastate transportation from Albertville to Attalla, Alabama, and was 11.7 cents per 100 pounds. This rate appears in the Intrastate Commodity Tariff filed by the carrier in conformity with the laws of Alabama. The other was an interstate rate of the plaintiff railroad company from Attalla to certain points beyond the State for cotton originating on the line of the Nashville, Chattanooga & St. Louis Railway Company, duly filed with the Interstate Commerce Commission, and was 32 cents per 100 pounds. That rate was preferable to the interstate rate from Birmingham, but to obtain it, interstate shipments of course had to begin at Attalla. So the defendants, in transhipping their cotton from Birmingham, where it was physically present, re-billed it back from Attalla, as though originating at and moving out of that place, deducting from the Attalla through rate of 32 cents the local rate already paid from Attalla to Birmingham. The two rates when added together amounted to 43.7 cents per 100 pounds, and this aggregate was the rate charged and paid for the interstate transporta-

tion from Albertville, the point of origin, to points of destination beyond the state.

Concurrently with these two tariffs there was in force a tariff of the Nashville, Chattanooga & St. Louis Railway Company, duly filed with the Interstate Commerce Commission, by which, under certificates of concurrence from the plaintiff railroad company and connecting lines, a fixed through rate for the same interstate shipment from Albertville to the same points of destination beyond the state was established at 57 cents per 100 pounds. This suit was brought to recover the difference between the rate paid and the rate established by the latter tariff, and in this way there arose the question—which tariff applies to the transportation.

[1] In approaching this question we lay aside all considerations of conduct, intention, mistake and misunderstanding respecting the rate paid, for the law is very well settled that the Act to Regulate Commerce demands not only that the carrier shall charge but that the shipper shall pay the legal rate. The contract between carrier and shipper is no longer a contract as to rates; it is merely a contract that the carrier will render transportation service when the shipper pays the legal rate. When the transportation is interstate, the interstate rate is the legal rate, and that rate must be demanded and paid, for both the carrier and shipper are charged with notice of it; and if a lesser rate is charged and paid, intentionally or innocently, recovery must be had against the shipper for the difference, in order that the policy of the law against unjust discrimination may be carried out. L. & N. R. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Texas & Pacific v. Abilene Cotton Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Kansas City Southern v. Albers Commission Co., 223 U. S. 573, 32 Sup. Ct. 316, 56 L. Ed. 556; Central R. R. of New Jersey v. Mauser, 241 Pa. 603, 607, 608, 88 Atl. 791, 49 L. R. A. (N. S.) 92.

In determining the question of law—which of the two rates is the legal rate applicable to the transportation service rendered—we must first determine as a matter of fact the character of the transportation. If it was partially intrastate, then certainly the combined intrastate and interstate rates paid was the legal rate. If it was wholly interstate, then there remains the question whether a rate partly intrastate can lawfully be charged for transportation wholly interstate.

[2] Whether commerce is interstate or intrastate must be determined by its essential character and not by mere billing or forms of contract. Chicago, Milwaukee & St. Paul Ry. Co. v. State of Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988; Ohio R. R. Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004; Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; R. R. Commission of Louisiana v. Texas & Pacific Ry. Co., 229 U. S. 336, 33 Sup. Ct. 837, 57 L. Ed. 1215. Goods actually destined for points beyond the state of origin are necessarily in interstate commerce when they are delivered to the carrier and start in the course of transportation to another state. Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715. This is true whether the goods are

shipped on through bills of lading or on initial bills only to a terminal within the same state, where they are transhipped and thereafter transported on new bills of lading to a destination beyond the state. Southern Pacific Terminal Co. v. Interstate Commerce Commission and Young, 219 U. S. 498, 527, 31 Sup. Ct. 279, 55 L. Ed. 310; Texas & New Orleans R. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; Ohio R. R. Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 652, 56 L. Ed. 1004.

[3] Applying these well established principles to the facts of this case it appears in the instance we have cited as illustrative of all shipments in issue, that the cotton was shipped upon an intrastate rate to Birmingham, where it remained in the possession and control of the carrier, subject to be divested by the defendants availing themselves of a provision in the bills of lading directing delivery to their order. This the defendants might have done but never did. Therefore, we are to determine the character of the transportation by what was intended and by what was done with the commodity transported, rather than by what might have been done with it. What the defendants did was not to call for delivery and acquire possession according to their right under the bills of lading, but to leave the cotton with the carrier for compression, (a right reserved by it and manifestly to be employed only when cotton was intended to be carried further,) and to direct its transportation by new bills of lading to points beyond the State. The concentration of cotton at the railroad's presses at Birmingham with the consequent interruption of the journey, was not a circumstance determining that the transportation ended at Birmingham and that therefore it was intrastate in character, but rather indicated the contrary, that compression to reduced bulk, being a thing desired and a right reserved when transportation was intended to be continued, the stop at Birmingham was not the end of a journey but was merely the interruption necessary to prepare the cotton for a journey to be continued. It was however but an incident in the transportation of a commodity of that kind, Southern Pacific Terminal Co. v. Interstate Commerce Commission and Young, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310, and it is well settled that the character of traffic, whether intrastate or interstate, must be gathered from its nature and not from its incidents. Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310; Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. 83; Ohio R. R. Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004.

[4] It is quite usual in cases such as this to find a controverted question of fact as to the character of the transportation, but in this case, in view of the manner in which the issue arose, it is doubtful that there is such a controverted question. The judgment below was entered on the plaintiff's statement of claim for want of a sufficient affidavit of defense. In it the plaintiff demanded payment of the difference between the rate charged and what it claimed to be the legal rate for the interstate transportation of cotton, giving in an accompanying bill of

particulars dates of shipment and amounts shipped, and showing in each instance points of origin within the State of Alabama and points of destination at tidewater in other States. It particularly averred that:

"In every instance the cotton shipped from the Alabama points of origin above mentioned was intended to be transported through to destinations beyond Birmingham and *actually was transported* (either for local delivery or to be exported from the United States) *to the points of destination in Georgia or Louisiana hereinbefore stated.*"

The defendants in their affidavit of defense did not deny that the shipments were made, as averred in the plaintiff's statement of claim, as to date, amount, origin, and destination, but on the contrary admitted:

"That the cotton specified in plaintiff's statement of claim was duly transported over its lines or the lines of its connecting carriers, and duly delivered to [them] or to [their] consignees."

As the affidavit of defense contains no averment that any of the cotton was delivered to the defendants at Birmingham or elsewhere in the State of Alabama, as it might have been, we infer that this admission relates wholly to deliveries at the interstate destinations indicated in the plaintiff's statement of claim. Nor is there any averment in the affidavit of defense that any of the cotton billed to Birmingham was even intended for transhipment to points in the State of Alabama, the averment with respect to transhipment being limited to the statement that when the defendants purchased uncompressed cotton at various points in Alabama, they "were not at all times certain" to what point they would ultimately ship the cotton after compression. It thus appears that the plaintiff averred and showed the transportation to be interstate and that the defendants did not deny it. As the plaintiff's averment went directly to the character of the commerce, an indispensable element in determining the question of rates, that averment, when not denied by the defendants, stands unanswered and is to be taken as true. We are therefore of opinion that the District Court committed no error in finding the transportation in question interstate in character.

[5] There remains the question whether the combined intrastate and interstate rates constitute the legal rate for the interstate transportation in issue. As authority for its contention that such is the legal rate, the defendants rely upon two cases. Gulf, Colorado & Santa Fé Railroad Co. v. Texas, 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540, and generally known as the Texarkana Case, and Chicago, Milwaukee & St. Paul R. R. Co. v. State of Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988. In each of these cases the shipment was interstate in its inception, and in each transhipment intrastate was made after destination had been reached. The question was whether the interstate rate from the point of origin to the second point of destination was the legal rate. The court held that the transhipment was a new shipment, intrastate in character, and therefore the interstate rate to the ultimate destination was not applicable.

These two cases are not easily distinguished from others indicating the contrary, the latest being Atchison, Topeka & Santa Fé Railway

Co. v. Harold, 241 U. S. 371, 36 Sup. Ct. 665, 60 L. Ed. 1050, unless they be confined to their own facts. As we read these cases it appears that the court considered the acceptance and delivery of the commodity by the consignee at the first point of destination as the determining fact. In the Texarkana Case the court said that after the commodity reached its first destination it came within the control of the consignee and thereby the first contract of transportation was completed. In the Iowa Case it appears that the consignee at the first point of destination had accepted the commodity, "had taken delivery" and had assumed full possession and control of it, and for that reason the initial contract of transportation was considered at an end before the intrastate movement began. If these cases turned, as we think they did, upon the circumstance of acceptance and delivery before transhipment, then certainly they are not authority for the case at bar, for in this case, delivery, though possible, was never made to the defendants, and control was assumed by them only to the extent of re-billing, which, as we have seen, is not itself a circumstance determinative of the character of transportation.

Putting aside the Texarkana Case and the Iowa Case as not controlling, we come to the Act to Regulate Commerce (section 6), which clearly prescribes the requisites of a lawful rate by directing every common carrier, subject to the provisions of the Act, to file with the Interstate Commerce Commission schedules showing all rates for transportation between points on its own route and points on its own route and points on the route of any other carrier when through and joint rates have been established, and forbidding any carrier to charge or receive a less or different compensation for such transportation between the points named in such tariffs than the rates there specified. We also come to decisions both by the Interstate Commerce Commission and Federal Courts to the effect that when such a through rate is established by tariffs filed with the Interstate Commerce Commission, that is the legal rate for that interstate journey, Louisville & Nashville R. R. Co. v. Maxwell, 237 U. S. 94, 97, 98, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011, and that that rate cannot be defeated by the device of billing to an intermediate point and re-billing from that point, Kanotex Refining Co. v. A., T. & S. F. Ry. Co., 34 Interst. Com. Com'n, 271 (1915). While other rates may be "equally lawful" (and this is the theory of the defendants' case), they are only so when separately charged for the particular transportation to which they are respectively applicable. In this instance, one was a lawful intrastate rate for an intrastate journey, but not having been filed with the Interstate Commerce Commission it was not a lawful rate for an interstate journey or for any part of one. Therefore, the combined rates being in part unlawful for a journey which we have found to have been interstate from its beginning, cannot be equally lawful with a through interstate rate lawfully established for the same journey by tariffs duly filed with the Interstate Commerce Commission.

When the rate for the whole of a given interstate journey is established by tariffs filed with the Interstate Commerce Commission in ac-

cordance with law, that rate becomes the lawful rate for that journey, and a rate for the same journey made up in part of a rate not filed with the Interstate Commerce Commission. is not the lawful rate, Standard Oil Co. of New York v. United States, 179 Fed. 614, 103 C. C. A. 172 (C. C. A. 2d), petition for writ of certiorari denied, 218 U. S. 681, 31 Sup. Ct. 229, 54 L. Ed. 1207; and if such unlawful rate be charged and paid, it amounts to discrimination within the spirit of the law and may be punished or corrected by appropriate action against the carrier or shipper. Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; Louisville & Nashville R. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665.

In finding that the affidavit of defense was insufficient because it failed to show that the defendants had paid the lawful rate, the trial court committed no error.

[6] The defendants maintain, however, that even if the affidavit of defense is insufficient, the plaintiff is not entitled to judgment, because the statement of claim is in itself insufficient in several particulars. These are, that while averring that certain certificates of concurrence (being instruments by which one railroad binds itself to the published rates of another) had been delivered, and certain rate schedules and tariffs had been filed with the Interstate Commerce Commission, the plaintiff did not set them out in full in the statement of claim. If the certificates of concurrence and the tariff schedules constituted the cause of action sued upon as in actions upon "notes, contracts and book entries," their full recital in the statement of claim would of course be necessary to entitle the plaintiff to a summary judgment. But this action is based upon a debt arising out of the violation of a statute and is brought to recover the balance of the amount which the statute directs to be paid, provable by certificates of concurrence and tariff schedules. Such certificates and schedules are therefore but evidence incidental (though essential) to the proof of the cause of action. As the statement of claim sets forth the fact of concurrence by the connecting carriers and all relevant parts of the rate schedules and tariffs involved, we are of opinion that it is sufficient.

The judgment below is affirmed.