## Adams Express Company, Appellant, *v.* Albright Brothers.

*Common carriers—Express company—Action for rates—Set-offs —Claims for damages to goods.*

In an action by an express company, for express charges made under existing tariffs duly filed, a defendant cannot set off a claim against the plaintiff for goods lost or damaged in transit.

A common carrier not only may but must demand and collect the proper charges of transportation in cash, and no contract, however fair, looking to the payment of such services by an exchange of commodities can stand. The public policy evinced by the acts of Congress relating to interstate commerce requires the denial of the right to set-off in such cases, leaving the shippers an independent action to enforce any rights that belong to them.

410, (1921).] Statement of Facts—Opinion of the Court.

Argued October 26, 1920. Appeal, No. 168, Oct. T., 1920, by plaintiff, from judgment of C. P. Blair Co., March T., 1920, No. 163, on verdict for defendant in the case of Adams Express Company v. W. S. Albright, Charles W. Albright, Frank J. Albright, trading and doing business as Albright Bros. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.. Reversed.

Assumpsit for express charges. Before BALDRIGE, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant in the sum of $243.64 and judgment thereon. Plaintiff appealed.

*Errors assigned* were various rulings on evidence and refusal of plaintiff's motion for judgment non obstante veredicto.

*J. D. Hicks,* and with him *Thomas H. Greevy,* for appellant.—The defendant could not set off a claim for damages in an action for the express charges: Illinois Cent. R. Co. v. W. L. Hoopes & Sons et al., 233 Fed. 135; C., I. & L. Ry. Co. v. United States, 219 U. S. 486, 31 Pa. Superior Ct. 272, 55 L. Ed., 305; Chicago & N. W. Ry. Co. v. William S. Stein Co., 233 Fed. 716; Johnson-Brown Co. v. Delaware, L. & W. R. Co., 239 Fed. 590.

*Robert W. Smith,* for appellee, cited: Jack v. Klepser, 196 Pa. 187; Smith & Co. v. Myler & Aber, 22 Pa. 36; Cochran v. Cutter, 18 Pa. Superior Ct. 282; Stroh v. Uhrich, I. W. & S. 57; Gilmore v. Reed, 76 Pa. 462; P. R. R. Co. v. Davenport, 154 Pa. 111; Filbert v. Hawk, 8 Watts 443.

OPINION BY HEAD, J., March 5, 1921:

The plaintiff, a common carrier, engaged in interstate commerce brought suit before a magistrate to recover the

regular tariff charges on an interstate shipment consigned to the defendants. From the judgment there obtained by the plaintiff, the defendants appealed to the court of common pleas. In the affidavit of defense filed in that court two distinct lines of defense were indicated, to wit: (1) Payment of the moneys sued for; (2) that plaintiff was indebted to defendants in a sum larger than that in suit "for loss, damage and destruction of produce which......occurred while the same was in possession of the company for transportation, etc." On the trial the defendant was permitted, over many objections, to offer evidence in support of both branches of the defense set up in the affidavit, and as a result of the submission of the whole of it to the jury, a verdict in favor of the defendants for $243.64 was rendered, upon which judgment was afterwards entered. The plaintiff appeals and files seventeen assignments of error to rulings admitting evidence over the objection of the plaintiff and to the charge of the court. They readily group themselves into two classes and the disposition we make of them will be manifest when we shall have stated our conclusions on the broad question underlying the entire case.

It will clarify our discussion of this controlling question as related to the evidence in the cause, if we first consider the mutual obligations of shipper and carrier created by law and thus beyond modification or abrogation by the parties; and those undertakings, if any, created solely by contract.

In Louisville and Nashville Railroad Co. v. Mottley, 219 U. S. 467, decided as long ago as February, 1911, Mr. Justice HARLAN, speaking for the court said: "It is now the established rule that a carrier cannot depart to any extent from its published schedule of rates for interstate transportation on file without incurring the penalties of the statute. [Many cases cited.] That rule was established in execution of a public policy which, it seems, Congress deliberately adopted as applicable to the inter-

state transportation of persons or property.  The passenger has no right to buy tickets with services, advertising, releases or property, nor can the railroad company buy services, advertising, releases or property with transportation......For instance, under the defense made by this company, there is nothing to prevent a customer of the road, who has received a personal injury, from making a claim against the road for any amount he chooses, and in consideration thereof, and of shipping all his goods by that road, receiving a rebate for all goods he may ship over the road for an indefinite time in the future.  It is almost needless to say that such a contract could not be supported."  The principle thus announced has been steadily followed in later cases covering many different phases of the same general proposition, and is constantly applied by the Interstate Commerce Commission itself and by the federal courts of lesser jurisdiction.  Thus in Rule 48. of the Conference Rulings of the Interstate Commerce Commission, we find "A shipper having a money demand against an interstate carrier sought to offset it against the amount of a freight bill which he owed the carrier upon a shipment of merchandise.  May this be lawfully done?  Held that the two transactions have no relation one to the other and that such a deduction from the lawful charges on the shipment could not be made."

In Chicago, etc., Ry. Co. v. Stein Co., 233 Federal Rep. 716, the reason for the principle is well stated by Judge MUNGER of the District Court of Nebraska in this language: "This action was brought to recover for charges for freight transported in interstate commerce.  The answer sets up a claim for damages accruing to defendant by reason of the negligence of the carrier in transporting articles in interstate commerce......Under the acts of Congress relating to the transportation of interstate commerce as construed by the Supreme Court of the United States in Louisville, etc., Ry. Co. v. Mottley (supra and other cases), the carriers cannot accept in

payment for the transportation of interstate commerce anything but cash and no contract, however fair, looking to the payment for such services by an exchange of commodities can stand. If a shipper may be permitted to set off in an action for freight earned by the carrier claims for damages which the shipper alleges he has sustained, the court must prevent the usual right to make compromises of such suits and must undertake the impossible task of holding the carrier to diligence and good faith in preparing and presenting its defenses, in order to prevent the granting and receiving of rebates by insidious agreement between the parties with reference to the disposition of the suit. The public policy evinced by the acts of Congress relating to interstate commerce requires the denial of the right to set-off in such cases, leaving the shippers an independent action to enforce any rights that belong to them."

The legal principle declared in the now familiar acts of Congress and the host of decisions construing and enforcing them, namely that the carrier not only may, but must demand and collect the proper charges of transportation in cash, is supported by such obvious reasons that to again attempt to state them would be a wholly superfluous task.

Taking up then first for consideration the second branch of the defense relied upon in the case at bar, we find that a firm called Lafferty Brothers was engaged in the produce business in the City of Altoona. In the course of its business it had extensive dealings with the plaintiff express company as shipper or consignee of merchandise. It had a number of small claims against the carrier company based on the alleged negligence of the carrier, either in failing to deliver goods or in permitting them to become damaged while in the course of transportation. They brought an action before a magistrate to recover these damages and in that action obtained a judgment. An appeal therefrom was taken by the company, and that appeal was pending and unde-

termined in the court of common pleas at the time of the trial of the case at bar. Meantime the present defendants had taken over the property and business of the firm of Lafferty Brothers, and among other alleged assets of that firm took title by assignment to the claim in litigation against the express company above referred to. On the trial of the present case the learned trial judge, over the objection of the plaintiff, permitted the defendants to introduce in evidence the magistrate's record of the proceedings before him, and as well the oral evidence of one of the defendants intended to support the claim. The jury were permitted to consider this as a legitimate offset or counterclaim to that of the plaintiff for what was conceded to be a lawful tariff charged for the transportation of an interstate shipment. In the light of the authorities we have cited and the reasons supporting them, we cannot escape the conclusion that in this respect the learned trial judge fell into error because that entire branch of the alleged defense had no legitimate place whatever in an action of this character. This view makes it unnecessary for us to consider the future proposition advanced, namely, that unliquidated damages arising ex delicto cannot be used as either set-off or counterclaim in an action of assumpsit.

We turn then to the consideration of the first branch of the defense, namely, that the tariff charges sued for had been paid. This, of course, was a legitimate defense, if supported by proper proof. In considering the character of the testimony actually offered, it may not be amiss to state in the outstart that the record shows no word of evidence on the part of the defendants that a single penny of these charges had ever been paid in cash. In any event even if we agree to the evidence of the defendant and all that is claimed for it, at most it would show but a payment on account, leaving a balance due to the plaintiff, and hence no support for a verdict for defendant. Now the allegation of payment, in part even, rests upon this state of facts. The defendants made claim

that the shipment of perishable goods, concerning which the plaintiff's charge arose, was greatly damaged at the time of its arrival because of the negligent manner in which it had been transported by the plaintiff. They brought an action before a magistrate to recover the damages thus claimed. They allege in their oral testimony that, as their suit was brought, they allowed a credit to the express company on account of damages of the sum which they then understood represented the express charges. The transcript of the magistrate furnishes no corroboration of this statement, save in the fact that it contains the declaration that the plaintiffs in that suit, the present defendants, claim "judgment in the sum of $91.12 balance due for damages done to produce in the course of shipment." No correspondence, no bills rendered nor anything of the kind appears to throw further light on the situation. Assuming, however, that the plaintiffs in that action did give credit to the Adams Express Company for the supposed amount of the express charges, it is manifest that was nothing more than an attempt to purchase transportation by a release of a claim for unliquidated damages alleged to have arisen from the negligence of the carrier.

We have already attempted to show that a carrier may not sell transportation in exchange for such a release nor may a shipper buy transportation by the execution and delivery of such a release. Such a transaction is forbidden by the law and the public policy of the federal government. This branch of the defense in the present case, therefore, stands upon no other or different footing than the one we have already considered with relation to the other branch of the defense. The learned trial court should have rejected all evidence tending to prove a payment of the transportation charges, which are now debts created by law, through any other medium than that of lawful money, which is the only medium recognized for such purposes by the law and by the courts.

The defense set up, therefore, failed on both branches for want of competent evidence, and the learned trial judge should have affirmed the plaintiff's second point, praying for a binding direction in its favor. Failing to do that, the motion for judgment in favor of the plaintiff notwithstanding the verdict should have been granted. It is true there is no verdict upon which a judgment for the plaintiff may now rest, but as the correctness of the tariff charges seems to be conceded, and as such charges, when properly set forth in schedules filed, published and approved have the effect of positive law, we have no doubt of the power of the court below under the Act of 1905 to have entered a judgment in favor of the plaintiff notwithstanding the verdict for the amount of such charges. That being true, it appears to us to be our duty to now enter that judgment, with interest on the same from the date when the learned court below disposed of the motion for judgment n. o. v.

The judgment of the court of common pleas is reversed and judgment is here and now entered in favor of the plaintiff express company in the sum of $126.05, with interest to be computed as aforesaid.