## Delaware, Lackawanna & Western R. R. Co. v. Weir et al.

*Carriers — Common carriers—Rates—Interstate commerce—Export commerce—Set-off.*

1. Where goods are shipped from a point in Pennsylvania to a point in United States territory in Panama, the rate between the shipping point in Pennsylvania and New York City, the transshipping point for the sea passage, is controlled by the rate established by the Interstate Commerce Commission and not by that established by the Pennsylvania authorities for intrastate traffic within the State.

2. The fact that the intrastate rate had been, by mistake, originally charged, will not affect the right of the carrier subsequently to collect the proper rate.

3. The contract between carrier and shipper is no longer a contract as to rates; it is merely a contract that the carrier will render transportation.

4. In an action by an interstate carrier for freight charges in a Pennsylvania court, the shipper cannot set off a claim for injury to goods, for the freight can be paid only in cash; in such case, the Pennsylvania defalcation act does not apply.

Rules: (1) For judgment for want of a sufficient affidavit of defence; (2) for judgment for want of a sufficient counter-claim; (3) why counter-claim should not be dismissed. C. P. Susquehanna Co., Nov. T., 1924, No. 84.

*G. T. Morgan,* for plaintiff; *Van Scotten & Little,* for defendant.

SMITH, P. J., Aug. 24, 1925.—The pleadings at bar upon the above rules present interesting questions, which, under the authorities by the courts, appear to us not very difficult of solution.

The three rules may be well considered together, for an affirmance of either of the second and third must result in a like affirmance of the first. Our discussion will be rather in the reverse order of their numbering.

And first, whether the counter-claim is such as may be properly interposed in this action, which is to recover by the plaintiff, a common carrier, the sum of $121.98 and interest, as freight charges for transportation of defendant's merchandise over its line from Hallstead Borough, Susquehanna County, Pennsylvania, to New York City, in the State of New York, and were the latter point the final destination, it would not be disputed the transportation would be "interstate" and not "intrastate," because it passes from one state of the American Union into and through another. But it is contended by the learned attorney for the defendant that from the pleadings we must assume it not to be within the term "interstate" transportation or commerce, because, being from one point in a state to Christobal, Panama, a portion of the distance being through territory of a foreign jurisdiction, it is "export" commerce or transportation, and an entire contract of shipment or transportation between the plaintiff and defendant from Hallstead, Pennsylvania, to Christobal, Panama, thus eliminating the jurisdiction of the Interstate Commerce Commission from or over the between Hallstead to New York shipment.

No doubt it is in the nature of an export, although the final destination, Christobal, Panama, be on United States territory. Were this contention of defendant correct, then a shipment from San Francisco, California, across several of the states forming the American Union to Christobal, Panama, *via* New York City, would result in holding that the portion of transportation from San Francisco to New York City would also not be "interstate." It is clear to us no such conclusion is possible; and while we find no direct decisions on this point, either Federal or state, our conclusion would appear in accord with the reasoning of Morley, Circuit Judge, in McFadden v. Alabama Great Southern R. R. Co., 241 Fed. 562, in the Circuit Court of Appeals, Third Circuit; in error to the District Court of the United States, Eastern District of Pennsylvania, affirming judgment entered in the latter court (see 232 Fed. 1000) for want of sufficient affidavit of defence upon a claim by the Railroad Co. v. Plaintiff in Error for freight for transportation based upon the rate fixed by the tariff established by the Interstate Tariff Commission from points of origin in Alabama upon a railroad line and connecting lines to New Orleans and Port Charlotte, Louisiana, and Savannah, Georgia, on separate bills of lading to Birmingham, Alabama, state of origin, and there surrendered, reshipments interstate and new bills of lading issued to destination in Louisiana and Georgia.

The defendant alleged in his affidavit of defence that he was only liable for the aggregate amount of the Alabama intrastate rate from point of origin to Birmingham, and the remaining interstate rate, which was less than the interstate rate alone for the entire distance of original and succeeding shipments, Thompson, District Judge, said (232 Fed. 1000, 1004) : "The effect of the combination rate is to enable the carrier to charge and the shipper to pay a less and different compensation . . . from that published and filed and in effect at the time, by permitting the shipper and carrier to apply to a part of the continuous through transportation a rate not filed with the Interstate Commerce Commission. Such practice is contrary to the interpretation of the law in a long line of undisputed rulings by the Interstate Commerce Commission." Citing Standard Oil Co. v. United States, 179 Fed. 614.

Were we to affirm the defendant's contention at bar on this point, it would afford both common carriers, shippers of commodities and passengers transported an easy pretext for deviation from the fixed and lawful charges by the interstate commission which is not permitted of circumvention in any manner. (See quotation, 237 U. S. 94, at bottom page 1002 of 232 Fed.)

Delaware, Lackawanna & Western R. R. Co. *v.* Weir et al.

Section 6 of the Federal Act to regulate commerce requires the filing of schedules of tariff or rates for transportation between points of *termini,* and further provides: "Nor shall any carrier charge or demand or collect or receive a greater or less or *different* compensation for such transportation . . . between the points named in such tariffs than the rates, fares or charges which are specified in the tariff filed and in effect at the time."

The primary purpose of the act in this regard was to fairly appraise shippers of the rates to be paid and to secure uniformity in charges: Per Noyes, Circuit Judge, in Standard Oil Co. *v.* United States, 179 Fed. 614, 623.

At bar we may well omit discussion as to any possible error of the Hallstead agent of plaintiff company or other representatives of the railroad company involved in the correspondence indicated as "Defendant's Exhibits 1 and 2," attached to and made part of the affidavit of defence, for, as is said by Wooley, Circuit Judge, in McFadden *v.* Alabama Great Southern R. R. Co., 241 Fed. 562, 564: "We lay aside all considerations of conduct, intention, mistake and misunderstanding respecting the rate paid, for the law is very well settled that the act . . . demands not only that the carrier shall charge but that the shipper shall pay the legal rate. The contract between carrier and shipper is no longer a contract as to rates. It is merely a contract that the carrier will render transportation."

This principle is reiterated by the Pennsylvania Superior Court in Philadelphia & Reading Ry. Co. *v.* Baer, 56 Pa. Superior Ct. 307, 310. Mr. Justice Henderson, in the opinion, saying: "The ignorance of the parties that a mistake had been made in the amount did not affect the question of liability. There is no place for the doctrine of equitable estoppel as applied to such a state of facts." And from opinion of Mr. Justice Stewart in C. R. R. of N. J. *v.* Mauser, 241 Pa. 603, 605: "No agreement for a rate other than that prescribed for the particular service can have any binding force. No matter how induced, the law will refuse to recognize in it any of the characteristics of a contract."

And the rate filed with the interstate commission in accordance with such law becomes the lawful rate for that journey.

It appears conceded by the affidavit of defence that the verity of the plaintiff's statement as to such filing of tariff of rates by it for the route, Hallstead to New York City, copied and attached to the statement of claim, is conceded, and that they are as sued for at bar, except that the gross amount is incorrectly computed because of defendant's allegations of a greater weight of the commodities transported than computed by the plaintiff. With this latter contention we have nothing to do at this time, and must assume, for the purposes of present motion, that plaintiff's computation is correctly made, for they have sued only for a certain sum computed at the correct tariff rate for transportation.

The Interstate Commerce Act (section 6 above quoted) provides not only that the carrier shall not charge, demand, collect or receive *greater* or *less* compensation than the tariff rates, but also shall not receive *different* compensation. We do not discover any authoritative interpretation of this term *different* as applied to "*compensation.*"

Without elaborating upon this point, we find decided, peculiarly appropriate at bar, the authority of Chicago & N. W. R. R. Co. *v.* Stein, 233 Fed. 716, per Munger, District Judge, that in an action by an interstate carrier for freight charges the shipper cannot set off a claim for injury to the goods, for the freight can be paid only in cash, and such set-offs would open the door to fraud and discrimination. If this is contrary to the usual application of

the Pennsylvania Defalcation Act and principles of recoupment, it is because the Pennsylvania courts are bound by the decisions of the United States courts in the construction and application of a statute of the National Congress, as was clearly held in matters relating to the Interstate Commerce Commission which we are now considering, in Dodge v. Adams Express Co., 54 Pa. Superior Ct. 422; Wright v. Express Co., 54 Pa. Superior Ct. 485; Hertz v. Express Co., 55 Pa. Superior Ct. 378.

As will be seen in 233 Fed. 716 (ante cited), freight charges must be collected and paid in cash and the "shippers must resort to an independent action to enforce any rights that belong to them." And this cash requirement is stated to be the law by interpretation by the Superior Court of Pennsylvania by Head, J., in Adams Express Co. v. Albright Bros., 75 Pa. Superior Ct. 410, 414, and by which we are controlled at bar. True, as claimed by the learned attorney for the defendant, the set-off or recoupment claimed in the last-cited case did not arise out of the same transaction as the plaintiffs claim for freight charges sued for, but they did in the case cited from 233 Fed. 716 (ante), and surely neither "set-off" nor "recoupment" nor "counterclaim" is cash.

We are, therefore, forced to strike out the counter-claim set up by the affidavit of defence as setting up an alleged contractual relation between the parties creating a liability; if any exists, which we do not now determine, the authorities cited in this opinion hold that it can be enforced only in a separate action by the defendant against the plaintiff at bar, for, "while shippers rely largely on rates quoted by freight agents and filing clerks, the law charges them with knowledge of the lawful rates, and they will not be heard by the commission to claim the benefit of a lower than the legal rate on the ground that the same railroad clerk has made a mistake in quoting a lower rate for a particular shipment. Such a course would open a broad and ample way for the payment of rebates and for other unlawful practice:" Per Mr. Justice Stewart in C. R. R. of N. J. v. Mauser, 241 Pa. 603, 606-07. For the effect of the alleged contract for transportation set up in the present affidavit of defence would be to lower the legal rate of freight from Hallstead, Pennsylvania, to New York City, New York, or its enforcement result in transportation from the latter point to Christobal, Panama; free as to the shipper and even at the actual outlay of freight charges over the Panama railroad and steamship lines by the Delaware, Lackawanna & Western Railroad Company, which we notice and recite without deciding whether such contract is enforceable in any action, but for the purpose of an illustration of opportunity for "rebate and other unlawful practice," mentioned in 241 Pa. (cited above), which, and any arrangements affording such opportunities, we observe are positively forbidden.

Neither do we deem the diversity of statement in the plaintiff's statement and defendant's affidavit of defence as to the weight of the excelsior transported; which was correct, and whether in legal effect the carrier gave an unlawful concession or rebate if weight given by the defendant is correct, material for our present consideration, as the remedy therefor would be by penalizing the carrier under the Interstate Commerce Commission statute, of which the Federal courts would only have jurisdiction.

As to the objections made that the affidavit of defence is a simple denial of the allegations of plaintiff's statement, and, therefore, insufficient to prevent judgment under the Practice Act of May 14, 1915, P. L. 483 (for which Fulton Farmer's Ass'n v. Bomberger, 262 Pa. 43, and Wayne T. & P. Co. v. Thomas P. P. Co., 83 Pa. Superior Ct. 158, are cited), they are probably

avoided by the additional allegations of defendant's conception of the contract between the parties; but having held such was not a legal defence, we conclude plaintiff is still entitled to judgment against the defendant for want of a sufficient affidavit of defence; therefore

And now, to wit, Aug. 24, 1925, motion for judgment for want of sufficient affidavit of defence is allowed and judgment directed to be entered in favor of the plaintiff and against the defendant for want of a sufficient affidavit of defence for the sum of $121.98, with interest from June 26, 1923, to wit, the sum of $137.83. Interest from Aug. 24, 1924, and costs.

From Gerritt E. Gardner, Montrose, Pa.