CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, Plaintiff-Appellant,

v.

MIDWEST HOMES, INCORPORATED, Defendant-Appellee.

No. 15600.

United States Court of Appeals Seventh Circuit.

Jan. 4, 1967.

Walter D. Cummings, Patrick C. Mullen, Chicago Heights, Ill., for appellant.

Wendell Tennis, Sullivan, Ind., Robert S. Ratcliffe, Terre Haute, Ind., for appellee.

Before HASTINGS, Chief Judge, KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

The plaintiff, Chicago and Eastern Illinois Railroad Company, brought suit as a common carrier to recover alleged undercharges from the defendant-shipper, Midwest Homes, Incorporated, under authority of Title 49 U.S.C. § 1 and Title 28 U.S.C. § 1337.

The defendant manufactures sections of houses on a production line basis which are shipped for assembly on the construction site.

Seventy-one such sections were shipped between September, 1959, and February, 1960, via the plaintiff's railroad and connecting railroads to Seattle, Washington.

Each of these shipments was covered by a separate bill of lading which in every case states that a 41′ 6″ flat car was ordered by the shipper, that plaintiff was unable to furnish flat cars of that size and that larger flat cars were "furnished at carrier's convenience." The defendant in each case paid for a 41′ 6″ flat car in accordance with Rule 34 of Uniform Freight Classification 4 and 5 and Trans-Continental Freight Bureau Freight Tariff 1015, introduced as exhibits in the District Court.

According to Rule 34, the shipper who orders a flat car of sufficient length to take the load pays only the rate for that length of flat car regardless of the fact that a longer flat car may be furnished at the convenience of the carrier who is unable to funish a flat car of the length ordered. However, if the length of flat car ordered cannot accommodate the load then the shipper pays the rate for the car which is furnished.

When the flat cars arrived in Seattle measurement showed that the loads could not have been placed on a 41′ 6″ flat car. The plaintiff recomputed its charges and sued to recover the difference between the new figures and what had been paid, with interest from the dates of shipment.

The plaintiff relies on the carrier's duty to collect the full rate irrespective of mistake, [Texas & Pacific Ry. Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011 (1906)] misquotation of rates, [Alabama Great Southern R. Co. v. George H. McFadden & Bros., D.C., Pa., 1916, 232 F. 1000, 1002, affd. 3 Cir., 1917, 241 F. 562] or collusion between the carrier and some

third party resulting in lower rates to the shipper [Fort Worth & D. C. Ry. Co. v. F. Burkart Mfg. Co., D.C., Mo., 1944, 56 F.Supp. 159, 160].

The plaintiff would have the Court consider solely the bills of lading which the District Court found were prepared and typed by agents of the plaintiff at the plaintiff's office, each flat car being already in transit prior to the time when these bills of lading were presented to and signed by the officials of the defendant who then paid the charges indicated on the bills of lading.

The evidence showed that prior to the first shipment, officials of the plaintiff had visited the plant of the defendant, which had never shipped by rail before, to determine rates and costs; that these officials inspected and measured the homes to be shipped, that during the course of these inspections, plaintiff's sales representative dictated a letter, dated September 4, 1959, which was typed up on defendant's letterhead, signed and handed to the sales representative. The letter read as follows:

*Phones: 8-2315 & 8-2325*                                    *On U. S. Highway 41*

September 4, 1959

Mr. Clyde Harstine
C E & I Agent
Oaktown, Indiana

Dear Sir:

    I wish to order 70 **41'** 6" flat cars to load with mobile homes consigned to Alaska.

    With modifications this home can be loaded on the **41'** 6" flat car. This order is to be effective September 5, 1959; the car is to be furnished for the rate of 10 per week beginning September 8. Maximum length 46' cars.

Yours truly,

MIDWEST HOMES, INC.

H. C. McKinley, President

HCMc:mes

Mr. McKinley testified that the changes in the letter to show the figures "41'" were made after it had been delivered, in the office of the plaintiff on the plaintiff's typewriter; that this letter was the only order placed, that no other written or oral orders were transmitted.

The District Court found:

4. The letter under date of September 4, 1959 addressed to Mr. Clyde Harstine, C&EI agent, Oaktown, Indiana, over the signature of Mr. H. C. McKinley, President of Midwest Homes, Incorporated constituted the order by the defendant from plaintiff for the flat cars upon which the sections of houses were shipped. That order ordered cars up to forty-six (46) feet in length.

5. The bills of lading which were prepared for each shipment consisted of one original document entitled "Bill of Lading," a first carbon copy entitled "Shipping Order" and a second carbon copy entitled "Memorandum Receipt." Each of those bills of lading were prepared and typed by agents of the plaintiff railroad at the office of the plaintiff railroad at Oaktown, Indiana. Each of the railroad cars carrying the sections of houses were in transit prior to the time that those bills of lading were presented to and signed by officials of the defendant company and did not constitute orders for any of the shipments here in question.

6. The defendant company ordered flat cars for shipment up to a maximum length of forty-six (46) feet and did not intend to order any car in excess of forty-six (46) feet.

7. All of the sections of houses shipped by defendant company and here in question could have been successfully and safely shipped on flat cars of forty-six (46) foot length.

The Trial Judge accordingly computed the charges assessable for the minimum weight for a flat car 46' in length and entered judgment for the plaintiff on that basis in the amount of $15,065.63 with interest.

The plaintiff contends that the letter quoted above was not an order, and that it is so vague and ambiguous as to be a mere nullity. We cannot agree. Our study of the record shows ample support for the findings and conclusions of the District Court, whose judgment is hereby affirmed.

Affirmed.