**EICKHOF CONSTRUCTION COMPANY,**
a Minnesota corporation, Plaintiff,

v.

**GREAT NORTHERN RAILWAY COM-PANY, a corporation, Defendant.**

No. 6–67–Civ–10.

United States District Court
D. Minnesota,
Sixth Division.

Oct. 21, 1968.

, Kenneth Johannson, Padden, Dickel & Johannson, Crookston, Minn., for plaintiff.

D. E. Engle, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In this action for damages, plaintiff seeks to recover for a loss arising out of a misquotation of freight rates by defendant, an interstate carrier. The action was originally commenced in the Ninth Judicial District of the State of Minnesota, but upon defendant's petition, was removed to this court where it is before us on a Stipulation of Fact. Federal jurisdiction appears doubtful.

Essentially, the following facts were stipulated: In December, 1964, plaintiff was negotiating with the United States Army Corps of Engineers for a competitive contract to repair, load, and transport various machinery and equipment from Minot, North Dakota to Norfolk, Virginia. In preparation for submission of its bid, plaintiff contacted defendant to obtain interstate freight charge quotations. The quotations supplied were mistakenly based on a rate far below the lawful published rate on file with the Interstate Commerce Commission. Relying on this misquotation, plaintiff bid for and won the shipping contract. After the shipment was completed, defendant discovered, and informed plaintiff of, its error. In 1966, plaintiff paid to defendant the full amount of freight charges at the lawful published rate and received from defendant its paid freight bill. These paid charges exceeded the originally quoted charges by $6,807.07, which amount, it is agreed, the plaintiff is entitled to recover if its cause succeeds.

The main punch of plaintiff's action is that the defendant negligently breached its duty to provide accurate quotations of freight rates to shippers, and that as a result of such negligence, plaintiff was compelled to make unanticipated payments resulting in damages in the amount above mentioned. The plaintiff also contends that the original rate quotation constituted a binding contract which defendant breached. Defendant's *major defense is that the only lawful rates are those on file with the Interstate Commerce Commission, that both shippers and carriers are charged with notice of, and bound by, such rates, and that a carrier is not liable for damages resulting from a misquotation of rates notwithstanding the reliance of a shipper.*

██ But before a federal court may decide a case brought before it, it must be assured of its jurisdiction over the subject matter of the action. While the removal and supporting jurisdiction were not challenged by the plaintiff, the court may, and indeed has a duty, on its own to examine its authority to decide a case. Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1946).

The authority for the removal of this action must be found, if it exists, in Title 28 U.S.C.A. § 1441(a) and (b). That statute makes removal dependent upon whether the action would have been within the original jurisdiction of a federal district court. See, 1 Barron & Holtzoff, Federal Practice and Procedure § 102 (1960); Jays Foods, Inc. v. Local Union No. 1, Amer. Bakery and Confectionary

Workers', etc., 255 F.Supp. 822 (N.D.Ill. 1966); Alaska Bar Ass'n v. Dickerson, 240 F.Supp. 732 (D.Alas.1965). So, we must look to the scope of original jurisdiction to discover whether this court could have heard this case in the first instance.

■ Because the agreed value of the interest involved is less than $10,000, jurisdiction cannot be based on general federal question jurisdiction, 28 U.S.C.A. § 1331, or on diversity of citizenship, 28 U.S.C.A. § 1332. It appears that the only plausible source of jurisdiction is § 1337 of Title 28 U.S.C.A., which reads:

> "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

No jurisdictional amount is required under this section. Bloomfield Steamship Co. v. Sabine Pilots Ass'n, 262 F.2d 345 (5th Cir. 1959). It is generally assumed that the phrase "arising under" in § 1337 is to be given the same breadth and limit as the synonymous phrase of § 1331 governing general federal question jurisdiction. See, 1 Moore's Federal Practice, § 0.60[8.–3].

■ The case reports are saturated with attempts to describe the attributes of a case that "arises under" the laws or Constitution of the United States in the sense required by 28 U.S.C.A. §§ 1331 and 1337. For example, it is said that:

> "To give rise to Federal jurisdiction under § 1337 * * * the basis of the action must concern the validity, construction or enforcement of a statute regulating commerce." Adams v. International Brotherhood of Boilermakers, etc., 262 F.2d 835, 839 (10th Cir. 1959).

As classic as any is the statement that,

> "where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely col-

orable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision." Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L. Ed. 577 (1921).

Some attempt at refinement is illustrated by the corollary that:

> "The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

See also, Wheeldin v. Wheeler, 373 U.S. 647, 649, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); Martin v. Wyzanski, 262 F.Supp. 925 (D.Mass.1967). Careful reading of cases which involve federal question jurisdiction helps to shade the often broadly sketched outlines of the "arising under" concept. One court has warned that,

> "Caution should be exercised in the use of such abstract definitions without reference to the facts and circumstances of the particular case, for the determination of the question of such jurisdiction must be made upon a common sense basis and a distinction must be made between controversies that are basic and necessary and those which are collateral and merely possible." Walker v. Savell, 243 F.Supp. 478, 480 (N.D.Miss.1965).

Thus whether the dominant aspect of the case is state or federal may be significant. Pollio & Son, Inc. v. International Brotherhood of Teamsters, etc., 242 F. Supp. 684 (E.D.N.Y.1965). It is also important to consider whether the social area which the litigation most closely touches is one wherein the federal interest and its concomitant need of uniformity predominate. International Ass'n of Machinists, etc. v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424 (2d Cir. 1965), cert. denied 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539; T. B. Harms Co. v.

Eliscu, 339 F.2d 823 (2d Cir. 1964), cert. denied 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435. Artificial division of jurisdiction is to be avoided where practicable. Sylgab Steel & Wire Corp. v. Strickland Trans. Co., 270 F.Supp. 264 (E.D.N.Y. 1967). Where, for example, Congress has specifically legislated, such as to provide a standard of care of goods for interstate carriers, even though a common law action is well established, federal jurisdiction is proper. Peyton v. Railway Express Agency, Inc., 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); Great Northern R. Co. v. Galbreath Cattle Co., 271 U.S. 99, 46 S.Ct. 439, 70 L.Ed. 854 (1926); Sylgab Steel & Wire Corp. v. Strickland Trans. Co., supra. But,

> "the mere fact that Interstate Commerce is involved and may be affected, is not sufficient to justify jurisdiction of a private suit seeking protection of such commerce." Toledo, P. & W. R. Co. v. Brotherhood of Railroad Trainmen, etc., 132 F.2d 265, 268 (7th Cir. 1942).

See also, Chicago & N. W. R. Co. v. Toledo, P. & W. R. Co., 324 F.2d 936 (7th Cir. 1963).

▓▓ Moreover, the mere existence of a question of federal law somewhere within the controversy is not enough. It is singularly pertinent to the case at hand to know that the basis for jurisdiction must appear from the well pleaded facts of the complaint standing alone and unaided by anticipated defenses, the answer, or the petition for removal. Peyton v. Railway Express Agency, Inc., supra; Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); Florida E. C. R. Co. v. Jacksonville Terminal Co., 328 F.2d 720 (5th Cir. 1964), cert. denied 379 U.S. 830, 85 S.Ct. 59, 13 L.Ed.2d 38; Dickson v. Edwards, 293 F.2d 211 (5th Cir. 1961); Olsen v. Doerfler, 225 F.Supp. 540 (E.D.Mich. 1963); Levitt & Sons, Inc. v. Prince Geo.

Cty. Cong. of Racial Equality, 221 F. Supp. 541 (D.Md.1963).

An analysis of cases involving freight rates in interstate commerce will further focus the principles that ought to be applied here.

A suit by a carrier to recover additional transportation charges due is within the ambit of § 1337, Title 28 U.S.C.A. Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 193 F.2d 441 (10th Cir. 1951). Thus, had the defendant in the instant case been forced to sue plaintiff for the difference between the legal and the misquoted rates, this court would have had jurisdiction. There is also authority for the position that suits by a shipper based on exaction of allegedly incorrect or discriminatory rates is within the jurisdiction of a federal district court. S. Patti Construction Co. v. Union P. R. Co., 72 F.Supp. 101 (W.D.Mo. 1947); National Elevator Co. v. Chicago, M. & St. P. R. Co., 246 F. 588 (8th Cir. 1917).[1]

Yet, with slight variations in fact, some courts have held that they lacked jurisdiction of suits growing out of incorrect freight charges. Thus in St. Louis-S. F. R. Co. v. Willard Mirror Co., 160 F.Supp. 895 (W.D.Ark.1953), where a carrier sued a shipper to recover the overpayment of a rate refund, the court held that the heart of the action was the mistaken payment of money, and that the amount of the legal freight charge was a collateral issue only, insufficient to provide federal jurisdiction. An earlier case with similar facts reached the same result. T. M. Partridge Lumber Co. v. Michigan Cent. R. Co., 26 F.2d 615 (8th Cir. 1928).

Finally, in Silent Sioux Corp. v. Chicago & N. W. R. Co., 262 F.2d 474 (8th Cir. 1959), a shipper allegedly lost a contract because the rate quoted by defendant carrier was in excess of the standard lawful rate. In holding for the carrier, the court apparently assumed that the

---

1. Questions, however, as to the reasonableness of the published rate are within the purview of the Interstate Commerce Commission. Northwestern Auto Parts Co. v. Chicago, B. & Q. R. Co., 240 F.2d 743 (8th Cir. 1957), cert. denied, 355 U.S. 815, 78 S.Ct. 16, 2 L.Ed.2d 32.

lower court had jurisdiction, although the question was never discussed in the appellate opinion. Therefore, although the facts of the case are quite similar to those of the case presently before us, its lack of discussion of the jurisdictional issue combined with the contrarity of other authority cast a serious doubt upon its stature as a binding precedent.

■■ The face of the complaint here, from which the basis for federal jurisdiction must derive, in no place refers to any specific provision of federal law. While that deficiency alone is not decisive, Sylgab Steel & Wire Corp. v. Strickland Trans. Co., 270 F.Supp. 264, 266–267 (E. D.N.Y.1967), it is an orange signal to a federal district court to proceed with caution. The substance of the complaint sounds in negligence and breach of contract, actions which ordinarily are not within the favor of federal question jurisdiction.

The alleged loss arises from a quoted freight rate which was in the plaintiff's words, "wrong, misleading, inaccurate and wholly in error." The error, of course, is the deviation of the original quotation from the mandatory rate established pursuant to federal law. And it was federal law which compelled the plaintiff to pay the full rate notwithstanding good faith reliance likely reasonable in a normal contract setting. But, once the lawful rate was paid, the immediate demands of the federal law have been fulfilled. Among the federal interests in the area of interstate shipments is the avoidance of discriminatory rates. Upon payment of the standard charge, these policies have been satisfied. This lawsuit bears no taint of a kickback or of collusion. The duty of the plaintiff as shipper "to pay the only legal rate the carrier had the right to charge * * *" has been met. Pittsburgh, C. C. & St. L. R. Co. v. Fink, 250 U.S. 577, 582, 40 S.Ct. 27, 28, 63 L.Ed. 1151 (1919). The duty of the defendant as an interstate carrier to collect the full established rate has as well been met. Chicago & E. I. R. Co. v.

Midwest Homes, Inc., 371 F.2d 300, 301 (7th Cir. 1967).

■ These duties having been fulfilled, the parties, in a relevant sense, stand in a new posture. The plaintiff has been forced to make an unexpected payment resulting in a loss of profit. Allegedly, the careless act of the defendant was the primary and proximate cause of that loss. Where a duty of care exists, a breach of that duty is negligence. Negligence is a cause of action deriving from the common law of states.

We cannot look ahead to all the issues that may develop in a consideration of the substantive merits. It may be that defendant's duty is in some way proscribed by federal law, but even if so, such a federal element will enter the case only as a matter of defense. And,

> "The question whether an action is removable as one involving a federal question depends upon whether the cause of action set forth by the plaintiff is one arising under federal law. Jurisdiction is not conferred by the fact that the defendant may rely upon federal law as a matter of defense." Levitt and Sons, Inc. v. Prince Geo. Cty. Cong. of Racial Equality, 221 F. Supp. 541, 543 (D.Md.1963).

This is so,

> "no matter how positive it may be both that defendant will assert it and second, that on one asserted construction rather than another, it would or would not be an effective defense." Dickson v. Edwards, 293 F.2d 211, 215 (5th Cir. 1961).

See also, Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ The long and the short of it is that no federal jurisdiction is alleged in the complaint, none appears to exist, and defendant's bald assertion in its petition for removal that the cause " * * * arises under the laws of the United States; namely, the Interstate Commerce Act * * *" does not establish jurisdiction here, and hence we have no choice

but to remand to the state court whence the action came.

It is so ordered.

But because the defendant has not had an opportunity to brief or urge the question of jurisdiction, the Clerk is directed to delay the entry of this Order for a period of 20 days to permit the defendant to make such motion as it may be well advised to make.