**Robert William HARPER, Petitioner,**

v.

**UNITED STATES of America et al., Respondents.**

Civ. A. No. 76–252.

United States District Court, D. South Carolina, Greenville Division.

June 1, 1976.

R. Wayne Byrd, of Dobson & Dobson, P. A., Greenville, S. C., for petitioner.

Mark W. Buyck, Jr., U. S. Atty., District of South Carolina, Columbia, S. C., J. D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., John J. McCarthy, Jr., Tax Division, Dept. of Justice, Washington, D. C., for respondents.

## ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

HEMPHILL, District Judge.

Defendants' motion to dismiss the complaint, filed May 6, 1976, seeks relief on the following grounds:

(1) The court has no jurisdiction of plaintiff's action;

(2) Plaintiff has failed to state a claim upon which an action can be based;[1]

(3) Plaintiff lacks standing;

1. Fed.R.Civ.P. 12(b)(6) provides: How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following

(4) Plaintiff has failed to properly serve certain defendants in their individual capacities.[2]

Plaintiff's motion for a temporary injunction, previously noticed, was not pressed at the hearing.

This is an action, filed February 11, 1976, by a taxpayer, who, at the time of filing, was the object of a criminal fraud investigation; he seeks injunctive relief and/or damages by virtue of the alleged violation, by the defendants, or the United States of America which the individuals collectively represent, of "the Privacy Act of 1974."[3] The complaint originally alleged that the circulation of two letters by respondents Stockell and McDermott, to Joe H. Venable and Clifton G. Cooper violated the privacy act.[4]

For the purpose of the record it was admitted that on December 11, 1975, Stockell and McDermott mailed a letter to Venable, and another letter to Cooper, which advised that the Regional Office of the Internal Revenue Service, Atlanta, Georgia, had forwarded the file on the plaintiff, then under investigation for criminal fraud[5] to the Justice Department (suggesting criminal prosecution). It is claimed that such letters contained information concerning matters personal to the records of petitioner, Robert William Harper, as maintained by the office of Regional Counsel for Internal Revenue Service, Southeastern Region. It is admitted that Harper, Venable and Cooper were all being investigated in connection with related facts, and counsel for each of them, and possibly in their presence, had discussed criminal investigation at the district level of the Office of Internal Revenue. Plaintiff complains that the letter tells Venable and Cooper that the Regional Counsel had recommended criminal prosecution and the file had been sent to the Department of Justice for criminal activity. Plaintiff contends that the problem is that after Venable and Cooper were informed, plaintiff had no way of knowing who else received the information that plaintiff was under investigation and that his case was in the hands of the Department of Justice in Washington for possible criminal prosecution. The only issue remaining is the issue of damages, and the question is whether or not plaintiff can proceed.[6]

## STATEMENT OF FACTS

Plaintiff is engaged in aspects of the electrical contracting business. On the basis of an investigation begun in 1974, defendants came to suspect that plaintiff had failed to report certain income from this business in his federal income tax return, and that certain actions of Venable and Cooper, with whom plaintiff did business, may have borne relation to this possible violation of the tax laws by plaintiff. While defendants' investigation concerned not only plaintiff but also Venable and Cooper, the administrative case was captioned,

defenses may at the option of the pleader be made by motion: . . . . (6) failure to state a claim upon which relief can be granted.

2. This last ground was abandoned at the hearing on May 20, 1976.

3. See 5 U.S.C. § 552a(b) which provides: No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains unless this disclosure is within one or more of the exceptions to section 552a(b) set forth in subsections (1) to (11) of that section. . . . .

4. A letter of June 16, 1975, was admittedly outside the coverage of the Privacy Act of 1974, since the Act is not retroactive and was not in effect on June 16, 1975. Another letter, dated December 11, 1975, was circulated after passage of the Act.

5. The overtones of this case is that plaintiff-petitioner is under investigation for criminal fraud. Because of the lawsuit or not, the fraud investigation has been dropped, and prosecution has been denied by the minions of the Justice Department, according to information furnished at the hearing of this motion.

6. The question of an injunction is moot, because it would have to apply to disclosures in the future, and would serve no purpose as the practice apparently employed on December 11, 1975, has been discontinued.

in accordance with then current administrative routines, only with the name of plaintiff and his wife and with plaintiff's address. In its entirety, this case caption is as follows:

In re: Robert William Harper, et ux.
4648–A Fillmore Drive
Wilmington, N. C. 28401

As a result of its investigation, the Columbia, South Carolina District of the Internal Revenue Service determined to refer plaintiff's case to the Regional Counsel of the Southeast Region for consideration of certain further possible administrative action. It is the practice of the Regional Counsel to provide notice of referral to persons who are the subject of such referrals; to offer them the opportunity for a conference regarding their case; and to inform them of their right to counsel. By letters dated, respectively, June 16, 1975, June 16, 1975, and Dec. 11, 1975 (2), the Regional Counsel, defendant Henry C. Stockell, through Assistant Regional Counsel, defendant Jerry K. McDermott, provided this notification to plaintiff, to Venable and to Cooper. The June letters contain no discussion or evaluation of the facts or status of plaintiff's case with respect to plaintiff himself or with respect to Venable or Cooper. Rather, the entire substantive content of the June letters is as follows:

(1) the administrative case caption cited above;

(2) the above-mentioned notification of referral;

(3) the offer of an administrative conference;

(4) notification of right to representation by counsel.

As a result of these letters, administrative conferences were held on August 7, 1975 between defendants and attorneys representing plaintiff, Venable and Cooper. All of these attorneys were from the same firm, and this firm also represents plaintiff in the present action. At the conferences, defendants notified attorneys, in accordance with standard administrative practice, that they would inform them of the further disposition of their clients' case. In keeping with this assurance, defendants, by letters dated December 11, 1975, notified plaintiff, Venable and Cooper of the referral of their case to the Department of Justice. These letters, consisting of a single brief sentence, were signed by defendant Stockell. As with the June, 1975 letters, the December letters contained no discussion or evaluation of any aspect of plaintiff's case.

## CONCLUSIONS OF LAW

Plaintiff bases his action upon the Privacy Act, 5 U.S.C. Section 552a(g)(1)(D), which provides jurisdiction in the federal courts against an agency which—

(D) fails to comply with any  .   .   . provision [other than those already indicated in subsections (A), (B) and (C) of section 552a(g)(1), which subsections are not here relevant] of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual.

Plaintiff alleges violation by defendants of Privacy Act, 5 U.S.C. Section 552a(b), which provides that—

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains unless this disclosure is within one or more of the exceptions to section 552a(b) set forth in subsections (1) to (11) of that section .   .   .   .   .

Plaintiff seeks to ground his claim for damages in this action upon Privacy Act, 5 U.S.C. Section 552a(g)(4), which provides as follows—

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

"(A) actual damages sustained by the individual as a result of the refusal

or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

"(B) the costs of the action together with reasonable attorney fees as determined by the court.

Defendants contend that plaintiff's complaint should be dismissed in its entirety and that he should be granted none of the relief which he seeks.

Because an evaluation of the factual content of the December 1975 letters must importantly affect any specific legal argument regarding those letters, it appears proper to consider that content before taking up particular legal contentions. Defendants insist that analysis of the letters shows that they can by no stretch of the imagination have resulted in significant disclosure of information about plaintiff to Venable or Cooper or in any significant harm to plaintiff.

The substantive content of the December letters consists, in its entirety, of the following two items: (1) an administrative case caption consisting of plaintiff's name and address; and (2) a notification of the referral of the case of Venable and Cooper to the Justice Department. As with the June 1975 letters, defendants contend that the mere mention of plaintiff's name in a case caption in the December 1975 letters cannot reasonably be anticipated to result in adverse inferences about plaintiff or in damage to him. The referral notifications to Venable and Cooper did not once mention the status of plaintiff with respect to referral. Thus, as with the June 1975 letters, it is wholly implausible that the December 1975 letters can have caused plaintiff harm.

In order to obtain jurisdiction for an injunction or for damages under the Privacy Act, a plaintiff must in effect allege that the disclosures of which he complains have caused him "an adverse effect." 5 U.S.C. Section 552a(g)(1)(D).

■ Furthermore, it is axiomatic that defendants in an action under the Federal Rules of Civil Procedure are entitled to " . . . fair notice of actual wrong, openly stated on the basis of facts asserted . . . ." *Spiegler v. Wills*, 60 F.R.D. 681 (S.D.N.Y.1973). Neither the court nor defendants should be required to speculate as to the actions and injuries of which the plaintiff complains. *Roe v. Wade*, 410 U.S. 113, 128, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *Cf. Peyton v. Railway Express Agency*, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); *Eickhof Construction Co. v. Great Northern Railway*, 291 F.Supp. 44 (D.Minn.1968); *McIntosh v. Garofalo*, 367 F.Supp. 501, 506 (M.D.Pa.1973). These principles are no less applicable in the context of Privacy Act litigation than in any other context. As the Supreme Court has recognized in *Laird v. Tatum*, 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972),

[Recent] decisions have in no way eroded the 'established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action.'

■ Conversely, "[g]eneral conclusionary allegations unsupported by facts are insufficient to constitute a cause of action," *Jewell v. City of Covington*, 425 F.2d 459 (5th Cir. 1970), *cert. denied*, 400 U.S. 929, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970); and where the claims in a complaint are insufficiently supported by factual allegations, these claims may properly be disposed of by summary dismissal. *Reese v. Nixon*, 347 F.Supp. 314 (D.C.Cal.1972); *Spiegler v. Wills, supra; Fredman v. Younger*, 282 F.Supp. 710 (C.D.Cal.1968); *Schaefer v. Macri*, 196 F.2d 162 (9th Cir. 1952), *cert. denied*, 344 U.S. 832, 73 S.Ct. 38, 97 L.Ed. 647 (1952). *Cf. Finley v. Hampton*, 154 U.S. App.D.C. 50, 473 F.2d 180 (D.C.Cir.1972); *Donohoe v. Duling*, 465 F.2d 196 (4th Cir. 1972); *Fifth Avenue Peace Parade v. Gray*, 480 F.2d 326 (2d Cir. 1973).

■ The December 1975 letters did not/do not contain any information about

plaintiff which could reasonably be anticipated to cause an adverse inference about plaintiff or to result in his harm. Furthermore, in his complaint plaintiff pleads no circumstances, however general or conclusory, which would support such an inference. Thus this court and defendants can only speculate as to the nature or causation of the harm which plaintiff alleges. Therefore, plaintiff has failed to plead adequately either the "adverse effect" required by the Privacy Act, 5 U.S.C. § 552a(g)(1)(D) or the "fair notice of actual wrong" required by Rule 12(b) of the Federal Rules of Civil Procedure.

The Privacy Act, 5 U.S.C. § 552a(b) prohibits the unauthorized disclosure by agencies of information about individuals contained in the agencies' system of records except insofar as these disclosures are within one or more of the exemptions to the Privacy Act set forth in 5 U.S.C. § 552a(b)(1)–(11). While the Act does not specifically define the term "disclosure," common sense requires that this term be taken to denote the imparting of information which in itself has meaning and which was previously unknown to the person to whom it is imparted. Defendants submit that the letters in issue in the present action cannot plausibly have resulted in any such disclosure. As an analysis of these letters, *supra,* reveals, they contain no information about plaintiff which could reasonably lead to anything other than idle speculation. In particular, the letters, while headed by case captions bearing plaintiff's name, say nothing about the nature of plaintiff's case; the status of his case; or even whether plaintiff's tax affairs are still of concern to defendants. When these letters are considered in themselves— as they must be, since plaintiff has failed to plead any explanatory circumstances regarding their meaning—it is apparent that they provide no significant information whatsoever about plaintiff, and thus are not within the purview of the Privacy Act.

Furthermore, since Venable and Cooper had already been contacted by defendants regarding plaintiff's case before the letters were sent, and were represented by the same counsel as plaintiff at the August 7 conferences, it appears reasonable to believe that any disclosures which are arguably implicit in the letters were already well known to Venable and Cooper. For this reason, too, the imparting of this information to Venable and Cooper cannot have constituted a "disclosure" within the meaning of the Privacy Act.

The Privacy Act permits agencies to disclose records maintained by them to the extent that these disclosures are within one or more of the eleven exceptions to the Act's prohibition of disclosure set forth in Privacy Act, 5 U.S.C. Section 552a(b)(1)–(11). Defendants maintain that, even assuming arguendo that the June 16 or December 11 letters resulted in any disclosure within the meaning of the Privacy Act, these disclosures were authorized by Section 552a(b)(3) of that Act. Section 552a(b)(3) permits disclosures—

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section

. . . .

Section 552a(a)(7) defines a "routine use" as follows:

[T]he term "routine use" means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected.

Section 552a(e)(4)(D) requires that each agency that maintains a system of records—

publish in the Federal Register at least annually a notice of the existence and character of the system of records, which notice shall include—

(D) each routine use of the records contained in the system, including the categories of users and the purpose of such use . . . . .

\* \* \* \* \* \*

While there appears to be no legislative history of the Privacy Act itself directly interpreting the meaning of "routine use" as used in that Act, the following passage

from the House Report on a closely similar provision in a predecessor bill, designated H.R.16373, would appear to provide an explanation of those terms—

[A requirement of consent to disclosure] would apply to all so-called non-routine transfers of information. It is not the Committee's intent to impede the orderly conduct of government or delay services performed in the interest of the individual. Under the conditional disclosure provisions of the bill, "routine" transfers will be permitted without the necessity of prior written consent. H.R.Rep.No.93–1416, 93rd Cong., 2d Sess. at 12 (October 2, 1974).

Additionally, the Office of Management and Budget has provided additional interpretative material with respect to the meaning of the "routine use" concept in Guidelines adopted pursuant to § 6 of the Act. In the Guidelines, OMB quotes extensively from Congressman Moorhead's statements in the Congressional Record of November 21, 1974 at H. 10962.

It would be an impossible legislative task to attempt to set forth all of the appropriate uses of Federal records about an identifiable individual. It is not the purpose of the bill to restrict such ordinary uses of information. Rather than attempting to specify each proper use of such records, the bill gives each Federal agency the authority to set forth the "routine" purposes for which the records are to be used under the guidance contained in the committee's report.

In this sense "routine use" does not encompass merely the common and ordinary uses to which records are put, but also includes all of the proper and necessary uses even if any such use occurs infrequently. 40 Fed.Reg. 28949 at 28953 (July 9, 1975).

■ As the above citations indicate, the Privacy Act contemplates that agencies must disclose certain information regarding individuals as an ordinary consequence of performing their routine agency duties. The Act provides that as long as these disclosures are pursuant to such duties and as long as the agency routines under which the disclosures occur are noticed in advance in the Federal Register, the disclosures are exempt from the provisions of the Act. Assuming *arguendo* that the December 1975 letters resulted in disclosures within the meaning of the Privacy Act, these disclosures were in the context of duly noticed routine uses by defendants and thus were not within the purview of the Act.

Any information concerning plaintiff which was arguably present in the June 1975 and December 1975 letters was drawn ultimately from the system of records maintained by the Intelligence Division of the Internal Revenue Service. Concerning this system of records, defendants on August 26, 1975 provided the following notice in the Federal Register pursuant to 5 U.S.C. § 552a(e)(4)(D)—

Disclosure may be made to other parties when necessary in the administration and enforcement of law as authorized by 26 U.S.C. 7801 and 7802. 40 Fed.Reg. 27602 at 37735 (August 26, 1975).

The letters themselves were part of the system of records designated by defendants as Chief Counsel Criminal Tax Case Files. On August 26, 1975, defendants provided Federal Register notice of these files under 5 U.S.C. § 552a(e)(4)(D); this notice stated that disclosure of information in these records may be permitted to—

(3) . . . appropriate parties when the Service is engaged in litigation or in preparation of possible litigation such as potential witnesses for the purpose of securing their testimony, courts for the purpose of proceeding with litigation, nonadversary or adversary parties and their attorneys for the purpose of proceeding with litigation or settlement of disputes, individuals seeking information by using established discovery procedures, to federal, foreign and state government agencies to the extent necessary to obtain records in their possession. 40 Fed.Reg. 27602 at 37756 (August 26, 1975).

As noted above, the December letters were prepared pursuant to routine and obviously reasonable administrative practices of the Southeast Regional Counsel. As is evident from their very text, the purpose of the June 1975 letters was to notify Venable and Cooper of certain information regarding an administrative investigation importantly affecting them; the purpose of the December 1975 letters was essentially the same. It is clear that these letters served a significant purpose both for defendants and for Venable and Cooper. The letters contain no element of information, however, trivial or indirect, other than that necessary to accomplish this purpose. Any disclosure resulting from the letters is a consequence of defendants' ordinary and necessary business, is entirely compatible with this purpose, and is well within the authorized routine uses set forth above in 40 F.R. 27602 at 37735 and 37756. As such, the disclosures were routine uses within the meaning of 5 U.S.C. § 552a(e)(4)(D) and are thus outside the purview of the Privacy Act.

It appears that plaintiff's complaint should be dismissed in its entirety. It is apparent that the plaintiff, as a party who has not "substantially prevailed" within the meaning of Section 552a(g)(3)(B), may not receive any grant of fees or costs under that Act.

### ORDER

The Clerk shall enter judgment dismissing the complaint.

AND IT IS SO ORDERED.