**CONSEJO PUERTORRIQUENO POR LA PAZ et al., Plaintiffs,**

v.

**DIRECTOR, FEDERAL BUREAU OF INVESTIGATION et al., Defendants.**

Civ. A. No. 78–1422.

United States District Court,
District of Columbia.

Sept. 14, 1978.

Michael D. Ratner, admitted pro hac vice, Center for Constitutional Rights, New York City, for plaintiffs.

Jason D. Kogan, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM

GASCH, District Judge.

Plaintiff Consejo Puertorriqueno por la Paz (Consejo) and other groups advocating independence for Puerto Rico brought this action seeking to enjoin the Federal Bureau of Investigation (FBI) and other defendants from disrupting or interfering with activities of the plaintiff groups or their members. Plaintiffs are alleging that acts committed by defendants violate plaintiffs' First Amendment and other constitutional and statutory rights. Defendants have moved to dismiss the cause on the grounds that the complaint fails to state a claim upon relief may be granted because it does not present a justiciable case or controversy within the requirement of Article III of the Constitution.[1]

Plaintiffs allege that defendants engaged in disruptive activities prior to a 1967 plebiscite on independence for Puerto Rico. Included in the alleged activities were such actions as making it falsely appear that members of plaintiff groups were FBI informants, sending anonymous disparaging cartoons and press releases, and establishing sham organizations for the purpose of disruption. Plaintiffs also allege, on information and belief, that defendants are currently engaged in the same type of disruptive activity, with respect to the United States Democratic National Party primary election scheduled for October 1, 1978, in Puerto Rico.[2] With their complaint, plaintiffs also filed a motion requesting that they be allowed to take expedited depositions of defendants. Plaintiffs were then requested to file an affidavit particularizing their claims of recent harassment by de-

---

1. U.S. Const., Art. III. *See Schlesinger v. Reservists' Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

2. Plaintiffs also allege that defendants are engaged in disrupting United Nations debates on decolonization.

fendants,[3] and on August 7, 1978, the motion for expedited discovery was denied. On September 8, 1978, a hearing was held on defendants' motion to dismiss.

Defendants contend that plaintiffs have failed to present this Court with a justiciable controversy, having alleged no specific and direct harm or threat of harm. Defendants maintain that plaintiffs have alleged no disruptive activities by defendants more recent than 1967, and that any allegations of recent disruptive activities are conclusory and without factual foundation.

The Court concludes that defendants' motion to dismiss should be granted. The complaint fails to state a claim upon which relief can be granted because plaintiffs have not shown that they are subjected to a specific present objective harm or a threat of specific future harm. *See Laird v. Tatum,* 408 U.S. 1, 14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Plaintiffs have only presented general conclusory allegations that defendants have continued their 1967 activities into 1978. "[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may properly be disposed of by summary dismissal." *Harper v. United States,* 423 F.Supp. 192,

196 (D.S.C.1976); *see Jewell v. City of Covington,* 425 F.2d 459 (5th Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970).[4]

All of the allegations in plaintiffs' complaint refer to incidents and events occurring prior to the 1967 plebiscite on Puerto Rican independence. In an attempt to provide the Court with a factual basis for the allegations that such activities have continued to the present, plaintiffs filed an affidavit purporting to set out recent instances of defendants' misconduct.[5] The affidavit, however, provides no factual basis for determining that these defendants have engaged in disruptive activities to the harm of these plaintiffs since 1967. The affidavit mentions several instances in which plaintiffs have discovered that they were under investigation.[6] Mere surveillance, however, without more, cannot establish the specific injury or threat of injury mandated by *Laird v. Tatum, supra.*

In *Laird v. Tatum, supra,* certain individuals claimed that their First Amendment rights had been inhibited and curtailed by the creation and maintenance of an information gathering system under the aegis of

3. The affidavit was filed on August 4, 1978, by Mr. Jose Lugo, one of the attorneys for the plaintiffs in this action. Although affidavits should be based on the affiants' personal knowledge, *see* 6 J. Moore, Federal Practice ¶ 56.22 (1974), Mr. Lugo set forth allegations concerning defendants' misconduct with respect to plaintiffs on the basis of information supplied to him by those plaintiffs. Lugo Affidavit at ¶ 8. Nevertheless, the Court has considered the affidavit as an attempt to provide a factual basis for the allegations in the complaint based on information and belief.

4. Plaintiffs argue that because defendants' alleged activities are inherently clandestine, they should not be burdened with the requirement that their claims have specific factual bases. Plaintiffs' Opposition to Defendants' Motion to Dismiss at 3–4; *see Moore v. Levi,* No. 75–6203 (S.D.N.Y. Sept. 29, 1977). Accepting the worth of plaintiffs' argument in general in this case there are countervailing considerations. First, as the United States Court of Appeals for the Second Circuit has noted, complaints alleging violations of civil rights must contain specific allegations of fact indicating a deprivation of those rights. *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir. 1976). Second, plaintiffs' complaint

and affidavit furnish no specific factual basis for any alleged misconduct by defendants since 1967, thus suggesting no reason to believe defendants are currently engaged in misconduct, clandestine or otherwise.

5. *See* note 3 *supra.* The affidavit was filed on August 4, 1978, to accompany plaintiffs' motion for expedited discovery. As indicated above, the Court has also considered the affidavit in support of the claims stated by the complaint.

6. The instant action is similar to *Laird* in another respect. In *Laird,* plaintiffs based their factual assertions on a magazine article. 408 U.S. at 2 n.1, 92 S.Ct. 2318. Government counsel represented at oral argument that the information which forms the essential basis for plaintiffs' allegations appeared in Puerto Rican newspapers in 1977. That representation was not denied by counsel for plaintiffs, and appears to this Court to detract from the sufficiency of plaintiffs' claims in light of their failure to satisfactorily allege any recent misconduct on the part of defendants.

United States Army Intelligence. In reviewing a motion to dismiss, the Supreme Court held that no justiciable controversy was present inasmuch as the plaintiffs had not shown any resulting direct injury or immediate threat of harm. 408 U.S. at 13–14, 92 S.Ct. 2318. Plaintiffs here seek to distinguish *Laird* on the basis that *Laird* involved "passive surveillance," while this case involves "active disruption." This attempted distinction is of no avail, however, because plaintiffs alleged no activities by defendants since 1967 that can be said to be "active disruption." All of the recent activities identified by plaintiffs and attributed to defendants seem clearly to be within the surveillance and information gathering category specified by *Laird* as not constituting specific direct harm to constitutional rights.[7]

Plaintiffs also allege that recent events possibly constituting more than "mere surveillance" have occurred.[8] Among these are the murder of a plaintiff's son, the bombing of a plaintiff's house,[9] and gunshots fired at a plaintiff's residence. Plaintiffs provide absolutely no basis, however,

for believing that these actions are in any way attributable to these defendants. Indeed, the recent activities relied on by plaintiffs to establish specific and direct harm are very different from the activities allegedly conducted by the defendants in the 1960's.[10]

Furthermore, the Supreme Court in *Laird* refused to authorize plaintiffs' "broad-scale investigation, conducted by themselves as private parties armed with the subpoena power of a federal district court and the power of cross-examination, to probe into the Army's intelligence-gathering activities . . . ." 408 U.S. at 14, 92 S.Ct. at 2326. In *Fifth Avenue Peace Parade Committee v. Gray,* 480 F.2d 326, 333 (2d Cir. 1973), the United States Court of Appeals for the Second Circuit observed that, in a declaratory judgment action, "the complaint must stand or fall on its own merits and cannot be used as a vehicle for searching out and discovering a right of action." The plaintiffs in this case have admitted to their lack of knowledge whether defendants are even engaged in continuing disruptive activities.[11] The complaint, therefore, does not

---

7. The Lugo Affidavit specifies, *inter alia*:
   Plaintiff Juan Mari Bras was subject to an FBI investigation as late as 1977. ¶ 7 of Affidavit.
   Portions of a plaintiff group's internal documents appeared in 1976 FBI memos. ¶ 13 of Affidavit.
   FBI agents attempted to question one plaintiff at his residence. ¶ 14 of Affidavit.
   Plaintiff Juan Mari Bras learned that copies of his personal bank records had been turned over to the FBI for some years. ¶ 11 of Affidavit.

8. The Lugo Affidavit specifies, *inter alia*:
   Plaintiff Juan Mari Bras' home was bombed. ¶ 8 of Affidavit.
   Plaintiff Juan Mari Bras' son was murdered. ¶ 9 of Affidavit.
   Plaintiff Juan Mari Bras' car was "burglarized" twice and his apartment keys were taken. ¶ 10 of Affidavit.
   Gunshots were fired at plaintiff Carlos Galliza's residence. ¶ 12 of Affidavit.
   Plaintiff Eneida Vazquez has on many occasions found her suitcases missing for several hours, and on several occasions has been searched at airports. ¶ 18 of Affidavit.

9. *An example of plaintiffs' claims is found in* ¶ 8 of the Lugo Affidavit. Mr. Lugo alleges at ¶ 8 that a plaintiff's house was bombed, credit

being taken by a group called "Grupo pro Defensa de la Democracia" (Group for the Defense of Democracy). Mr. Lugo notes the "striking similarity" between that group's name and that of a group called "Grupo pro uso del Voto" (Group for the Use of the Vote), allegedly an FBI sham organization of 1967. On the basis of this strained parallelism, Mr. Lugo alleges that the FBI is responsible for the bombing.

10. The activities alleged to have occurred in and before 1967 include establishing sham organizations, making it falsely appear that some plaintiffs were informers, and sending anonymous cartoons and press releases. Complaint at 9–10. The more recent activities alleged include bombing, shooting, and breaking and entering an automobile. Lugo Affidavit at 3–4. Given the admittedly explosive nature of the independence issue in Puerto Rico, Complaint at 7, the Court finds no factual basis for the allegations that the recent events mentioned are attributable to the defendants.

11. At oral argument, counsel for plaintiffs admitted that their interest in pursuing discovery with regard to this lawsuit was to find out what "disruptive activities" would be engaged in by the FBI in connection with the October, 1978, Democratic Party primary in Puerto Rico.

present a justiciable controversy appropriate for resolution by this Court.[12]

Accordingly, the Court will grant defendants' motion to dismiss the complaint for failure to state a claim.

---

12. Defendants also contended that service on defendant Special Agent in charge of the FBI's New York office and defendant Special Agent in charge of the FBI's San Juan office was defective. Because the complaint is dismissed on other grounds, the Court finds it unnecessary to decide that issue.